**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

VALERIE HERRERA,

      Plaintiff,

   v.                5:24-cv-245 (AMN/ML)

SYRACUSE UNIVERSITY AND THE
SYRACUSE UNIVERSITY SCHOOL OF
ARCHITECTURE, and MICHAEL A. SPEAKS, in
his capacity as Dean of the Syracuse University
School of Architecture,

      Defendants.

---

| | |
|---|---|
| **APPEARANCES:** | **OF COUNSEL:** |
| **OFFICE OF JEREMIAH F. MANNING, III**<br>49 Oldox Road<br>Delmar, New York 12054 | **JEREMIAH F. MANNING, III, ESQ.** |
| **TOPOROWSKI LAW, PLLC**<br>PO Box 7271<br>Albany, New York 12224<br>*Attorneys for Plaintiff* | **MATTHEW A. TOPOROWSKI, ESQ.** |
| **JACKSON LEWIS P.C.**<br>666 Third Avenue – 29th Floor<br>New York, New York | **GREGORY C. BROWN, ESQ.**<br>**RYAN C. CHAPOTEAU, ESQ.** |
| 677 Broadway 9th Floor<br>Albany, New York 12207<br>*Attorneys for Defendants* | **KRISTI RICH WINTERS, ESQ.** |

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.  INTRODUCTION

   On February 20, 2024, Plaintiff Valerie Herrera ("Plaintiff") commenced this action

against Defendants Syracuse University, Syracuse University School of Architecture, and Michael

1

Speaks, in his capacity as Dean of the Syracuse University School of Architecture, seeking money damages in connection with claims alleging, *inter alia*, that Plaintiff was subject to discrimination on the basis of her sex, race, and national origin while employed at the Syracuse University School of Architecture. *See* Dkt. No. 1. Presently before the Court are Defendants' partial motion to dismiss the Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure, Dkt. No. 7, and Plaintiff's cross-motion for leave to amend her complaint, Dkt. No. 22. Plaintiff filed an opposition to Defendants' partial motion to dismiss after a series of procedural deficiencies, Dkt. No. 23, and Defendants filed an omnibus reply in further support of their partial motion to dismiss and in opposition to Plaintiff's cross-motion, Dkt. No. 27. For the reasons that follow, Defendants' partial motion to dismiss is granted in part and denied in part, and Plaintiff's cross-motion for leave to file an amended complaint is granted in part and denied in part.

## II.    BACKGROUND

Unless otherwise noted, the following facts are drawn from the Complaint, its attachments, or materials it incorporates by reference, and are assumed to be true for purposes of ruling on the motions, *see Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*), or are otherwise matters of public record, *Williams v. N.Y.C. Hous. Auth.*, 816 Fed. Appx. 532, 534 (2d Cir. 2020).

### A.  The Parties

Plaintiff is a 38-year-old Mexican American female who is a full-time Assistant Teaching Professor at the Syracuse University School of Architecture. *See* Dkt. No. 1 at ¶¶ 1, 4. Defendant Syracuse University is a private research facility located in Syracuse, New York, and is comprised of 13 separate schools and colleges, including Defendant Syracuse University School of

2

Architecture.  *See* Dkt. No. 7 at 7.[1]  Defendant Speaks is the Dean of the School of Architecture.

*Id.*

**B.  E.E.O.C. Charge**

On July 7, 2023, subsequent to internal complaints Plaintiff made on or about December 28, 2022 and January 13, 2023, Plaintiff filed a Charge of Discrimination with the Equal Opportunity Employment Commission ("E.E.O.C.") and New York State Division of Human Rights, alleging that Defendant Syracuse University had discriminated against her on the basis of Plaintiff's sex, race, and national origin, by:

1.  Disabling Plaintiff's access to records, resources, and communications following a medical leave that took place from August 2022 through December 2022;

2.  Denying Plaintiff the position of "Studio Coordinator," which Plaintiff alleges she was slated to receive following her return from medical leave;

3.  Denying Plaintiff the opportunity to apply for or be considered for the "Florence Directorship Position," which was instead awarded to a white male;

4.  Excluding Plaintiff from the School of Architecture's 2022-2023 "DEIA Council and all DEI Programming;"

5.  Removing Plaintiff from teaching a course within her primary area of expertise in May 2023, which was reassigned to a "presumed White male"; and

6.  Non-party Associate Dean Kyle Miller referring to an academic course project addressing the issues of Gender, Latina, Black, Jewish, Muslim, and Class Identity as "that Black Lives Matter project."

---

[1] Defendants claim that it was "improper[]" for Plaintiff to name the Syracuse University School of Architecture as a separate defendant from Syracuse University.  Dkt. No. 7 at 6; Dkt. No. 27 at 5.  However, Defendants do not explain why naming the Syracuse University School of Architecture as a separate defendant was improper, nor does Plaintiff address Defendants' statement.  Thus, for purposes of this Memorandum-Decision and Order, the Court will treat Syracuse University and Syracuse University School of Architecture as separate Defendants.  To the extent that Defendants seek to dismiss Syracuse University School of Architecture as a Defendant, they are instructed to file a letter motion setting forth their proposed justifications for dismissal.

*See* Dkt. No. 8-1.  While Plaintiff noted in the E.E.O.C. Charge that she was subjected to other discriminatory acts that took place prior to her taking a medical leave in August 2022 through December 2022, the Charge does not go into further detail regarding those apparent acts.  *Id.*  The E.E.O.C. subsequently issued Plaintiff a Right to Sue Notice.  *See* Dkt. No. 1 at 5.

### C.  Plaintiff's Original Complaint

On February 20, 2024, following her receipt of the Right to Sue Notice, Plaintiff filed the instant action, bringing claims against Defendants under the United States Constitution, New York State Constitution, Title VII of the Civil Rights Act of 1964, the New York Human Rights Law ("NYSHRL"), and the Family and Medical Leave Act.  *See generally* Dkt. No. 1.  Plaintiff's claims are based on the allegations contained in her E.E.O.C. Charge, as well as other contentions regarding Defendants' alleged discrimination based on Plaintiff's sex, race, and national origin,[2] including:

1. Failing to nominate Plaintiff for a teaching award in 2020, 2021, 2022, or 2023, instead nominating white men and women and despite Defendant Speaks previously articulating the importance of nominating a Latina for the award (*see* Dkt. No. 1 at ¶¶ 44-49);

2. Offering Plaintiff annual, as opposed to multi-year, assistant teaching professor contracts throughout Plaintiff's tenure despite offering multi-year contracts to other, "dean-favorite," assistant teaching professors (*see id.* at ¶¶ 85-91);

3. Denying Plaintiff's requests for a tenure-track faculty position as an "opportunity hire" or "spousal hire" in November 2021 and March 2022, despite having previously

---

[2] While Plaintiff's E.E.O.C. Charge alludes to other, omitted, discriminatory acts contained in "attached documents that clearly show a pattern of years of discrimination and hostile actions against [her]," Plaintiff does not attach to her Complaint, proposed amended complaint, or her opposition brief those "attached documents."  *See generally* Dkt. Nos. 1, 22, 23.  Defendants contend that "Plaintiff did not include any additional documents with her charge."  Dkt. No. 7 at 7.  As Plaintiff does not make any argument to the contrary in any of her papers, the Court assumes for purposes of this Memorandum-Decision and Order that the additional allegations listed in Section II(C) and contained in her original Complaint were not made in the E.E.O.C. Charge.

granted such requests on two separate occasions for male faculty members (*see id.* at ¶¶ 100-107);

4. Requiring Plaintiff to perform uncompensated summer labor in the summer of 2022, even though Plaintiff's contract ran from August 15 – May 15 of that year (*see id.* at ¶¶ 108-112);

5. Rejecting Plaintiff and her domestic partner's request for a research grant in the spring of 2022, but approving all other faculty proposals for research grants (*see id.* at ¶¶ 113-119);

6. Excluding Plaintiff from participating in a "meaningful" way in drawing workshops in the fall of 2021 and spring of 2022 and failing to compensate Plaintiff for her participation in those workshops (*see id.* at ¶¶ 120-137);

7. Failing to consider Plaintiff for the position of "NYC Program Director" in May 2022, which was ultimately awarded to a white applicant (*see id.* at ¶¶ 138-143);

8. Discontinuing Plaintiff's employment as a "Teaching Associate" in 2014 and 2015 due to a perceived conflict of interest (*see id.* at ¶¶ 144-157);

9. Asking Plaintiff to sign an employment contract without meaningful salary negotiations in 2019 (*see id.* at ¶¶ 158-163); and

10. Failing to consider Plaintiff for new administrative appointments in the spring of 2022, instead awarding those positions to white individuals (*see id.* at ¶¶ 168-172).

**D.  Defendants' Motion**

On April 22, 2024, Defendants moved to partially dismiss Plaintiff's original Complaint, arguing that: (i) Plaintiff's federal and state constitutional claims are fatally flawed and should be dismissed because Defendants are not state actors subject to constitutional claims; (ii) Plaintiff failed to exhaust her administrative remedies with respect to the allegations supporting her Title VII claims that were not contained in Plaintiff's E.E.O.C. Charge; and (iii) Plaintiff's NYSHRL claims pre-dating July 7, 2020 are time-barred.  *See* Dkt. No. 7.

**E.  Plaintiff's Cross-Motion, Opposition, & Proposed Amended Complaint**

On June 27, 2024, after the Parties consented to an extension, Plaintiff filed an opposition to Defendants' partial motion to dismiss.  *See* Dkt. No. 18.  Along with the opposition, Plaintiff filed an amended complaint, without leave of Court or Defendants' consent.  *See* Dkt. No. 17.

Deeming both filings procedurally improper, the Court *sua sponte* struck Plaintiff's amended complaint and opposition brief from the docket. *See* Dkt. No. 21.

With the Court's guidance, Plaintiff ultimately filed a cross-motion seeking leave to amend her complaint on July 19, 2024, alongside a response in opposition to Defendants' motion to dismiss. *See* Dkt. Nos. 22, 23. As part of her cross-motion, Plaintiff submitted a proposed amended complaint pursuant to Northern District of New York Local Rule 15.1(a). *Id.* Plaintiff's proposed amended complaint: (i) removes Plaintiff's constitutional causes of action; (ii) adds a cause of action pursuant to 42 U.S.C. § 1981; (iii) adds two additional Title VII causes of action; (iv) adds a cause of action for "common law wrongful termination against public policy;" (v) bolsters the factual allegations contained in Plaintiff's original Complaint, including that Defendants did not properly investigate Plaintiff's January 13, 2023 internal complaint; and (vi) adds new allegations of discrimination and retaliation from the time period after Plaintiff filed her E.E.O.C. Charge, including:

1. Non-party Associate Dean Miller's omitting positive information from, and misrepresenting certain information in, Plaintiff's 2023 performance evaluation letter, despite Plaintiff never having never received such a letter in years prior, and despite Miller giving a "glowing and overly supportive" performance evaluation letter to a white female assistant teaching professor (Dkt. No. 22-3 at ¶¶ 176-181); and

2. "Terminating" Plaintiff's employment as a full-time, full benefits faculty member in January 2024, when Plaintiff would be eligible for promotional considerations, and instead offering Plaintiff a limited, one semester teaching contract for the fall of 2024 that "was not the standard contract that Plaintiff had previously had," (Dkt. No. 22-3 at ¶¶ 182-185).[3]

---

[3] The proposed amended complaint also notes that (1) Plaintiff is still a full-time faculty member of Defendants; and (2) other assistant teaching professors at Syracuse University received limited contracts at the same time Plaintiff did. *See* Dkt. No. 22-3 at ¶¶ 184-185. Thus, the nature of Plaintiff's alleged "termination" is ambiguous, which the Court discusses in further detail, *infra*.

### F.  Defendants' Omnibus Reply

On September 9, 2024, Defendants filed a final brief in support of their motion to partially dismiss Plaintiff's Complaint and in opposition to Plaintiff's cross-motion for leave to file the proposed amended complaint.  *See* Dkt. No. 27.  In the reply portion of the brief, Defendants primarily rehash their arguments regarding Plaintiff's failure to exhaust her administrative remedies and the untimeliness of most of Plaintiff's claims and further argue that Plaintiff has conceded that her constitutional claims are not actionable.  *Id.* at 6-9.  In the portion of Defendants' brief opposing Plaintiff's cross-motion for leave to amend, Defendants argue that Plaintiff cannot set forth viable claims for relief through amendment, and thus the cross-motion should be denied as futile.  *Id.* at 9-14.

As described in the Court's July 30, 2024 Text Order, Dkt. No. 26, the motions are now ripe for adjudication.

### III.    STANDARD OF REVIEW

### A.  Motion to Dismiss

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also Legette-Edwards v. City of Syracuse*, No. 5:06-CV-892 (NAM/DEP), 2007 WL 2891774 (N.D.N.Y. Sept. 28, 2007) (applying the same standard to a proposed amended complaint).  This presumption, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to

relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted). Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

### B. Leave to Amend

Fed. R. Civ. P. 15(a) provides in relevant part: "a party may amend [a] pleading once as a matter of course at any time before a responsive pleading is served. . . ." *See also Best Payphones, Inc. v. City of New York*, No. 04-CV-3541, 2006 WL 845506, at *2 (E.D.N.Y. Mar. 30, 2006). When a cross-motion for leave to file an amended complaint is made in response to a motion to dismiss under Fed .R. Civ. P. 12(b)(6), leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, *i.e.*, if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). When assessing futility, the court employs a standard comparable to that utilized in assessing a motion to dismiss under Rule 12(b)(6). *See Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (observing

that "leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss").

## IV.    DISCUSSION

Since the standards for analyzing both Defendants' motion and Plaintiff's cross-motion are largely the same, for the sake of efficiency and given the procedural deficiencies that preceded this briefing, the Court will assess the plausibility of all of Plaintiff's claims as set forth in both the original and proposed amended complaints notwithstanding the fact that Defendants moved to dismiss only partially. *See Milanese*, 244 F.3d at 110; *see also Balkum v. Sawyer*, No. 9:09-CV-0289 (NPM), 2010 WL 3927817, at *4 (N.D.N.Y. Oct. 4, 2010) (*sua sponte* review of plausibility notwithstanding parties' failure to move or oppose on certain issues).

### A.  Constitutional Claims

In her original Complaint, Plaintiff brought discrimination claims pursuant to the Fourteenth Amendment of the United States Constitution, as well as Article I, Section 11 of the New York State Constitution. *See* Dkt. No. 1 at ¶¶ 173-178, 192-193.  In response, Defendants argued that these claims should be dismissed because Defendants are private parties and not state actors subject to constitutional claims. *See* Dkt. No. 7 at 9.  Plaintiff did not oppose Defendants' argument, and instead asserts that the proposed amended complaint replaced her claim pursuant to the United States Constitution with a claim pursuant to 42 U.S.C. § 1981, and replaced her claim pursuant to the New York State Constitution with a "common law wrongful termination against public policy" claim and two additional Title VII claims. *See* Dkt. No. 23 at 5-6.

As Plaintiff has not opposed Defendants' motion with respect to the constitutional claims, the Court deems those claims abandoned. *See Doe v. St. Lawrence Univ.*, No. 23-CV-426 (BKS/DJS), 2024 WL 1116454, at *14 (N.D.N.Y. Mar. 14, 2024) (collecting cases); *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 449 (S.D.N.Y. 2018) (collecting cases); *see*

*also Malik v. City of New York*, 841 Fed. Appx. 281, 284 (2d Cir. 2021) (summary order) ("'[W]hen a party fails adequately to present arguments' in a brief, a court may properly 'consider those arguments abandoned,' especially 'in the case of a counseled party' where 'a court may . . . infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.'" (second alteration in original) (first quoting *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004); and then quoting *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014)).

Accordingly, Plaintiff's claims under the United States and New York State Constitutions are dismissed in their entirety.

## B.  Title VII Claims

In her original Complaint, and maintained in her proposed amended complaint, Plaintiff pleads discrimination and retaliation claims pursuant to Title VII of the Civil Rights Act of 1964. Dkt. No. 1 at ¶¶ 179-191; Dkt. No. 22-3 at ¶¶ 191-203.  In her proposed amended complaint, Plaintiff adds a disparate impact claim pursuant to Title VII, as well as a cause of action titled "Continuous and Systematic Violations Title VII Discrimination."  *See* Dkt. No. 22-3 at ¶¶ 247-264.[4]  Defendants move to partially dismiss Plaintiff's Title VII claims by arguing that she failed

---

[4] The Court is not aware of a separate cause of action under Title VII for "Continuous and Systemic Violations."  Viewing the proposed amended complaint in the light most favorable to Plaintiff, the Court interprets Plaintiff's Ninth Cause of Action as a request to apply the continuing violation doctrine to Plaintiff's other Title VII claims for discrimination, retaliation, and disparate impact. Since that doctrine will be discussed in connection with those recognized causes of action, *infra*, the Court dismisses *sua sponte* Plaintiff's Ninth Cause of Action as duplicative of her other Title VII claims.  *See generally* 42 U.S.C. §§ 2000e-17; *see also Chiesa v. New York State Dep't of Labor*, 638 F. Supp. 2d 316, 324 (N.D.N.Y. 2009) ("While . . . Title VII prohibits numerous forms of employment discrimination, the discrimination must be caused by one of the characteristics mentioned in [the statute].").]; *c.f. Cooper v. Xerox Corp.*, 994 F. Supp. 429, 436 n.8 (W.D.N.Y. 1998) (dismissing "employer liability" cause of action plead under Title VII for being unrecognized as a separate cause of action).

to exhaust her administrative remedies with respect to certain allegations not contained in Plaintiff's E.E.O.C. Charge.  Dkt. No. 7 at 12-15; Dkt. No. 27 at 7-8.  In their Omnibus Reply, Defendants additionally attack the merits of certain allegations made by Plaintiff and contend that they are insufficient to state a cognizable claim pursuant to Title VII.  *See* Dkt. No. 27 at 10-14.

### i.  Exhaustion & Statute of Limitations

"Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency."  *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-5).  Additionally, "the claimant must make the EEOC filing within 300 days of the alleged discriminatory conduct and, before bringing suit, must receive a 'Notice of Right to Sue' letter from the EEOC."  *Id.* at 70 (citing *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001)) (other citation omitted).  "An exception to the exhaustion requirement may be made for claims not formally asserted before the agency if they are 'reasonably related' to those properly filed with the agency."  *Moore v. DeJoy*, 600 F. Supp. 3d 332, 343 (S.D.N.Y. 2022) (citing *Williams*, 458 F.3d at 70).  "There are three types of claims which may be considered 'reasonably related' for purposes of satisfying the exhaustion requirement: (1) claims that 'fall within the scope of the [administrative agency's] investigation which can reasonably be expected to grow out of the charge of discrimination;' (2) claims that allege retaliation for filing an administrative charge; and (3) claims that allege 'further incidents of discrimination carried out in the same manner alleged in [the administrative] charge.'"  *Wilson-Richardson v. Regional Transit Serv., Inc.*, 948 F. Supp. 2d 300, 305 (W.D.N.Y. 2013) (quoting *Carter v. New Venture Gear, Inc.*, 310 Fed. Appx. 454, 455 (2d Cir. 2009) (summary order)).  "In examining what issues would be expected to 'grow out of the charge of discrimination,' the Court looks to 'the factual allegations

made in the . . . charge itself,' and determines 'whether the complaint filed with the [administrative agency] gave that agency adequate notice to investigate discrimination on both bases.'" *Id.* (quoting *Williams*, 458 F.3d at 70).

Here, Plaintiff filed her E.E.O.C. Charge on July 7, 2023, and the Charge alleges that she was subjected to specific instances of discrimination and retaliation based upon the certain acts described, *supra*, Section II(C), all of which followed Plaintiff's August 2022 through December 2022 medical leave.  Construed liberally, Plaintiff's E.E.O.C. Charge alleges that Plaintiff was subject to discrimination on the basis of her sex, race, and national origin following her August 2022 through December 2022 medical leave and following internal complaints she made on December 28, 2022 and January 13, 2023.  *See* Dkt. No. 8-1 at 3 ("I have been subjected to discriminatory terms and conditions because of my sex, race, and national origin, Mexican Latina, and that I was retaliated against for participation in the protected activities of requesting reasonable accommodation and complaining of discrimination.").  Accordingly, drawing all reasonable inferences in Plaintiff's favor, the E.E.O.C. would have had notice that Plaintiff was asserting claims of discrimination and retaliation with respect to that subject matter during that time period. *See Williams*, 458 F.3d at 70.

As Defendants point out, many of Plaintiff's allegations in the Complaint and proposed amended complaint are purported to have occurred *before* Plaintiff took her medical leave in August 2022, and are thus outside the scope of the E.E.O.C. investigation arising from the Charge. These include allegations that Defendants: (1) failed to nominate Plaintiff for a teaching award in 2020 and 2021; (2) failed to offer Plaintiff multi-year teaching contracts in 2019, 2020, and 2021; (3) denied Plaintiff's requests for a tenure-track faculty position as an "opportunity" or "spousal" hire in November 2021 and March 2022; (4) required Plaintiff to perform uncompensated labor in

the summer of 2022; (5) rejected Plaintiff's request for a research grant in the spring of 2022; (6) excluded Plaintiff from participating in a "meaningful" way in a drawing workshop in the fall of 2021 and spring of 2022; (7) failed to consider Plaintiff for the position of "NYC Program Director" in May 2022; (8) discontinued Plaintiff's employment as a "Teaching Associate" in 2014 and 2015; (9) asked Plaintiff to sign an employment contract without meaningful salary negotiations in 2019; and (10) failed to consider Plaintiff for new administrative appointments in the spring of 2022.  As the E.E.O.C. was only on adequate notice to investigate discrimination and retaliation activity that occurred after August 2022, these additional allegations are not reasonably related to the E.E.O.C. Charge.  Regarding Plaintiff's more generalized allegations in the E.E.O.C. Charge that other, unnamed discriminatory acts "show a pattern of years of discrimination and hostile actions against me," these allegations are not sufficient to expand the scope of the E.E.O.C. Charge given their lack of specificity.  *See Choi v. Chem. Bank*, 939 F. Supp. 304, 313 (S.D.N.Y. 1996) ("EEOC cannot be expected to investigate mere generalizations of misconduct, nor can defendants adequately respond to them."); *see also Chinn v. City Univ. of New York Law School*, 963 F. Supp. 218, 223 (E.D.N.Y. 1997) ("vague, general discharge of discriminatory conduct raised before the EEOC is not sufficient to trigger agency investigation of specific instances of discrimination alleged in the complaint").

　　To the extent that Plaintiff relies on the continuing violation doctrine to render the pre-August 2022 allegations timely, such efforts fail.  The continuing violation doctrine applies to claims "composed of a series of separate acts that collectively constitute one unlawful [ ] practice." *Washington v. Cnty. of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002)).  "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."

*Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). It is construed in the Second Circuit as a "narrow exception" to limitations periods and courts "have generally been loath to apply it without a showing of compelling circumstances. The doctrine has essentially been limited to situations where a specific discriminatory policy or mechanism has been alleged." *DeJesus v. Starr Technical Risks Agency, Inc.*, No. 03-Civ-1298, 2004 WL 2181403, at *6 (S.D.N.Y. Sept. 27, 2004); *see also Klein v. New York Univ.*, No. 07-Civ-160, 2008 WL 3843514, at *2 (S.D.N.Y. Aug. 14, 2008) ("The continuing violation doctrine applies to claims of a very limited scope."). Even construing the Complaint and proposed amended complaint in the light most favorable to Plaintiff, the allegations are episodic, concern different individuals at different stages of Plaintiff's employment (sometimes with large time gaps in between), and do not concern one specific discriminatory theory, policy, or mechanism. Thus, the continuing violation doctrine does not apply to Plaintiff's Title VII discrimination claims.[5] *See, e.g.*, *O'Hazo v. Bristol Burlington Health Dist.*, 599 F. Supp. 2d 242, 251 (D. Conn. 2009) (declining to apply the continuing violation doctrine where "claims merely add[ed] up to multiple instances of similar discrimination."). Therefore, the Court finds that any allegations pertaining to events that occurred prior to August 2022 are time-barred with respect to Plaintiff's Title VII claims.

Due to Plaintiff's failure to timely exhaust her administrative remedies on the above additional allegations, Plaintiff cannot now pursue Title VII causes of action based on them. This

---

[5] Indeed, Plaintiff's claims appear to be premised in large part on the theory that Defendants failed to promote her, but the Second Circuit has expressly held that failure to promote claims are not entitled to the benefit of the continuing violation doctrine. *Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004) ("The law is clear that . . . promotion claims may not be based on discrete acts falling outside the limitations period.") (citing *Morgan*, 536 U.S. at 114); *see also Allen v. N.Y.C. Dep't of Env't Prot.*, 51 F. Supp. 3d 504, 510 (S.D.N.Y. 2014) (multiple instances of failure to promote cannot together form a continuing violation even when the "same employee has been repeatedly denied a position").

does not, however, preclude Plaintiff from using these untimely allegations as background evidence to support timely allegations. While "[a]n uncharged discriminatory act cannot itself be the basis for Title VII claim, as the plaintiff would have failed to exhaust her administrative remedies[,] [ ] it can serve as support for a separate, charged discriminatory act that forms the basis of a Title VII claim." *Walker v. New York City Dep't of Corr.*, No. 01-Civ-1116, 2008 WL 4974425, at *17 (S.D.N.Y. Nov. 19, 2008) (citing *AMTRAK v. Morgan*, 536 U.S. 101, 113, (2002)). "In other words, events that are themselves incapable of sustaining a discrimination claim can serve as evidence in support of another, valid claim." *Id.* (citation omitted); *see also Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) ("[E]xpiration of the limitations period does not bar an employee from using the prior acts as background evidence in support of a timely claim.").

### ii.  Merits

As an initial matter, to the extent that Plaintiff names Dean Speaks as a Defendant in any of her Title VII claims, such claims must be dismissed against him since "individuals are not subject to liability under Title VII." *Patterson v. Cnty. of Oneida, New York*, 375 F.3d 206, 221 (2d Cir. 2004) (internal quotation marks and citation omitted); *see also Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) ("the district court's dismissal of [the] plaintiff's Title VII claims against [the defendant] in his personal capacity must be affirmed because under Title VII individual supervisors are not subject to liability.").

Next, consistent with the analysis above, only the allegations post-dating August 2022 listed, *supra*, in Sections II(C), (D)—*i.e.*, those allegations explicitly listed in the E.E.O.C. Charge or those that reasonably relate to the allegations of discrimination and retaliation based on Plaintiff's sex, race, and national origin contained in the E.E.O.C. Charge—will be considered in

analyzing Plaintiff's Title VII claims against Defendants Syracuse University and Syracuse University School of Architecture.

### a.  Title VII Discrimination (Second Cause of Action)

Title VII prohibits discrimination with respect to the "terms, conditions, or privileges of employment." 42 U.S.C. § 2000e2(a)(1).   To state a *prima facie* case for employment discrimination under Title VII, a plaintiff must show that: (1) she was a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Collins v. New York City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002) (citing *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999)). At the initial pleading stage, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse action was attributable to discrimination.  They need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015).

In the instant case, the parties do not dispute that Plaintiff, a Latina female, has adequately pled that she was a member of protected classes, and that she was qualified for the position of assistant teaching professor.  Thus, the outstanding questions with respect to Plaintiff's second cause of action are whether she has adequately pled that (1) she suffered an adverse employment action and (2) the circumstances surrounding that adverse employment action give rise to an inference of discrimination.

The Second Circuit defines an adverse employment action as a "materially adverse change" in the terms and conditions of an individual's employment. *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004).  "An adverse employment action is one which is more disruptive

than a mere inconvenience or an alteration of job responsibilities." *Terry v. Ashcroft*, 335 F.3d 128, 138 (2d Cir. 2003) (internal citation and quotations omitted). "Examples of such a [materially adverse] change include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Id.* Other examples of recognized adverse employment actions include: (1) a refusal to promote, *see Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002); and (2) employment suspension, *see Islamic Soc. of Fire Dep't Personnel v. City of New York*, 205 F. Supp. 2d 75, 84 (E.D.N.Y. 2002) (citing *Markel v. Bd. of Regents of the Univ. of Wis. Sys.*, 276 F.3d 906, 911 (7th Cir. 2002)).

Here, certain of Plaintiff's timely allegations regarding Title VII discrimination are not recognized adverse employment actions based on Second Circuit jurisprudence. First, with respect to Plaintiff's allegations that Defendants failed to nominate her for a teaching award in 2022 or 2023, it is well-settled that the failure to nominate an employee for an award does not constitute an adverse employment action under Title VII. *See Renzi v. Oneida Cnty.*, No. 6:19-CV-1133 (LEK/ML), 2021 WL 4477233, at *9 (N.D.N.Y. Sept. 30, 2021) (citing cases). Second, Plaintiff's allegation in her E.E.O.C. Charge that non-party Associate Dean Kyle Miller referred to an academic course as "that Black Lives Matter Project," is omitted from the Complaint and proposed amended complaint. *See generally* Dkt. Nos, 1, 22-3. Regardless, workplace comments, even if racially insensitive and thus deplorable, do not constitute adverse employment actions. *See Davis v. NYS Dep't of Corr. Attica Corr. Facility*, 46 F. Supp. 3d 226, 235 (W.D.N.Y. 2014) ("With respect to Plaintiff's claim that Ms. Post made a racially insensitive comment and that Mr. Whiteford agreed, verbal abuse is typically insufficient to constitute an 'adverse employment action' because negative or otherwise insulting statements are hardly even actions, let alone

'adverse actions.'") (internal quotation marks omitted); *see also Teachout v. N.Y.C. Dep't. of Educ.*, No. 04-CV-0945, 2006 WL 452022, at *13 (S.D.N.Y. Feb. 22, 2006) ("Negative comments . . . are not, standing alone, adverse employment actions, because mere comments do not materially affect employment.").  Third, regarding the allegation that Associate Dean Miller discriminated against Plaintiff in his Fall 2023 Letter of Evaluation, performance evaluations, even if negative, do not constitute adverse employment actions absent some showing that the evaluation led to an adverse result such as a demotion, diminution of wages, or other tangible loss.  *See Chamberlin v. Principi*, No. 02-Civ-8357, 2005 WL 1963942, at *5 (S.D.N.Y. Aug. 16, 2005); *see also Gurry v. Merck & Co., Inc.*, No. 01-Civ-5659, 2003 WL 1878414, at *5 (S.D.N.Y. Apr. 14, 2003) (finding that the plaintiff's performance evaluation, which contained both positive and negative elements, did not constitute an adverse employment action where the plaintiff failed to allege facts from which a jury could conclude that it had material ramifications during her employment or in obtaining future employment); *see also Boyd v. Presbyterian Hosp. in City of New York*, 160 F. Supp. 2d 522, 537 (S.D.N.Y. 2001) (finding that the plaintiff's allegation that the defendant wrongfully included incidents that never took place and made other errors in her performance evaluation did not constitute an adverse employment action where the plaintiff failed to establish that the inclusion of such purportedly false information led to any change in her employment). Plaintiff's proposed amended complaint does not tie Miller's performance letter to any such material ramifications.  To the contrary, Plaintiff concedes that Miller's letter was submitted to the University's Teaching Professor Evaluation Committee ("TPEC") and resulted in Plaintiff receiving "a 3-0 unanimous ***positive*** vote . . . a ***positive*** letter of evaluation and support, and a unanimous recommendation from the TPEC to the Dean for her employment contract to be renewed."  Dkt. No. 22-3 at ¶ 182 (emphasis added).

The Court similarly finds that certain of Plaintiff's other timely allegations do not adequately establish adverse employment actions sufficient to state a Title VII discrimination claim because they do not allege that Plaintiff's employment was negatively altered in any way as a result of the alleged conduct. For example, the Complaint and proposed amended complaint are devoid of contentions regarding how—if at all—Plaintiff's employment was materially impacted by: (1) Defendants' failure to immediately restore Plaintiff's access to records and communications following Plaintiff's return from medical leave, after which Plaintiff ultimately gained full access; (2) Plaintiff's exclusion from a leadership position in the University's DEIA Programming, which Plaintiff claims would have afforded her "course relief," without detailing how lacking "course relief" negatively impacted the terms and conditions of her current position[6]; (3) Defendants' failure to offer Plaintiff a non-tenured, multi-year, teaching contract, even though Plaintiff had never received a multi-year teaching contract in the past and was instead consistently awarded an annual teaching contract; or (4) the manner in which the University handled Plaintiff's January 13, 2023 internal complaint, which included Plaintiff meeting with an outside attorney for five hours who subsequently issued a "summative report" to Defendant Syracuse University, the contents of which are not set forth in the pleadings.[7] Since Plaintiff fails to connect, either

---

[6] Indeed, it appears that the DEIA Director position, which Plaintiff claims was associated with "course relief . . . worth roughly between 50K – 80K annually," Dkt. No. 22-3 at ¶ 76, was eliminated in 2023 and replaced with the DEIA Council. *See id.* at ¶ 81. Plaintiff makes no similar allegations regarding whether course relief was afforded to members of the DEIA Council or how her employment was otherwise impacted by Defendants' failure to place Plaintiff on the DEIA Council.

[7] While Plaintiff alleges in a conclusory fashion that the handling of the January 2023 internal complaint was "part of a continuous and systematic policy at Syracuse University/School of Architecture over the last 150 years to discriminate against people of color and women and those of Mexican national origin," courts have held that these sorts of "[n]aked assertions of race discrimination . . . without any specific [factual] allegation of a causal link between the [d]efendants' conduct and the [p]laintiff's [protected characteristic]" are insufficient to state a claim for Title VII discrimination. *Sanders-Peay v. N.Y.C. Dep't of Educ.*, No. 14-CV-4534, 2014

explicitly or implicitly, these allegations to a materially adverse change, including any sort of decrease in wage or salary, a less distinguished title, a material loss of benefits, or significantly diminished job responsibilities, they are not sufficiently pled in a manner for the Court to find that they constitute adverse employment actions. *See Terry*, 336 F.3d at 138; *see also Cunningham v. New York State Dep't of Labor*, 326 Fed. Appx. 617, 619 (2d Cir. 2009) ("everyday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions within the meaning of Title VII.").

Plaintiff's timely allegations not otherwise discussed above include: (1) being denied the position of Studio Coordinator in 2022 and 2023; (2) being denied the opportunity to be considered for the "Florence Directorship Position" in 2022 and 2023; (3) removal from a teaching assignment in Plaintiff's primary area of expertise in 2023; and (4) the January 4, 2024 "termination."

First, with respect to the denial of the Studio Coordinator position and consideration for the Florence Directorship position, Plaintiff does not explicitly allege in the Complaint or proposed amended complaint that those positions would be considered "promotions," denial of which would clearly constitute adverse employment actions. *See, e.g.*, *Phillips*, 278 F.3d at 109; *see also Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 457 (S.D.N.Y. 2023) ("failure to promote [the plaintiff] . . . upon his requests for promotion at his yearly review, constituted an adverse employment action"). However, Plaintiff does allege that the Studio Coordinator position was "an important developmental experience for junior faculty," and being denied the opportunity "imped[ed] Plaintiff's] growth during important developmental years." Dkt. No. 22-3 at ¶ 58.

---

WL 6473507, at *3 (E.D.N.Y. Nov. 18, 2014); *see also Patane*, 508 F.3d at 112 (affirming dismissal of a Title VII gender discrimination claim where the complaint failed to "set forth any factual circumstances from which a gender-based motivation for such an action might be inferred").

While Plaintiff does not set forth similar impact allegations with respect to the Florence Directorship position, *see id.* at ¶¶ 96-103, reading the allegations in the light most favorable to Plaintiff, the Court can reasonably infer that a change from a generic title ("assistant teaching professor") to a named faculty title ("Florence Program Director") could constitute a promotion.

Recognizing that these position denials are sufficiently pled adverse employment actions based on a failure to promote theory, the Court next assesses whether Plaintiff has adequately alleged that such denials give rise to an inference of discrimination. In that regard, the Court finds in the affirmative. In order to adequately plead that she was treated less favorably than other similarly situated employees outside of her protected class, Plaintiff must allege that she is "similarly situated in all material respects to the individuals with whom she seeks to compare herself," *Mandell*, 316 F.3d at 370, or that a "significantly less qualified" individual was offered the job, *Anyanwu v. City of New York*, No. 10-Civ-8498, 2013 WL 5193990, at *14 (S.D.N.Y. Sept. 16, 2013) (collecting cases). With respect to the Studio Coordinator position, Plaintiff claims that "very inexperienced part-time instructors," who were white, were awarded that position over her, even though Plaintiff was a full-time employee and contends that "she is extremely well-qualified and by all accounts, a stellar teacher and professor." Dkt. No. 22-3 at ¶¶ 61-62. With respect to the Florence Directorship position, Plaintiff asserts that the ultimate recipient of the position was "an employee at [Plaintiff's] same rank." *Id.* at ¶ 99. These contentions are sufficient, at this juncture, to give rise to an inference of discrimination premised on a disparate treatment theory and thus they are sufficient to state a discrimination claim upon which relief could be

granted.  *See Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) ("Whether two employees are similarly situated ordinarily presents a question of fact for the jury.") (citing cases).[8]

Second, with respect to Plaintiff's allegation that, in 2023, she was removed as the instructor for a particular drawing course within her primary area of expertise, Plaintiff claims that she was replaced by a white female part-time employee.  Dkt. No. 1 at ¶¶ 80-84; Dkt. No. 22-3 at ¶¶ 84-88.[9]  Plaintiff claims that this individual declined the position, and that, upon the declination, Defendants awarded the course to a recently tenured professor, Omar Ali, who Plaintiff asserts did not have the relevant experience to teach the course.  *Id.*  Removing Plaintiff as the instructor of this course, Plaintiff contends, was evidence of "deliberate steps to lay the foundation for the termination of Plaintiff."  *Id.*  In this regard, the Court notes that demotions can constitute adverse employment actions within the meaning of Title VII discrimination claims, so long as it is established that there was "a change in job description, job title, days and hours worked, salary, benefits, or opportunity for promotion[.]"  *Garber v. N.Y.C. Police Dep't*, 159 F.3d 1346 (2d Cir. 1998).  However, "a plaintiff's subjective perception that a demotion has occurred is not enough."  *Id.* (quoting *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir.1996), *cert. denied*, 522 U.S. 816

---

[8] Plaintiff's Complaint and proposed amended complaint appear to concede that she never formally applied to either position.  *See* Dkt. No. 22-3 at ¶¶ 59, 98.  In order to show an adverse employment action, a plaintiff must actually apply for the desired position.  *See Petrosino*, 385 F.3d at 227.  However, a plaintiff may be excused from this requirement if she demonstrates that the vacancy was not posted and that the plaintiff either did not know about the vacancy or tried to apply through informal procedures endorsed by the employer.  *Id.*; *see also Fox v. Cnty. of Yates*, 657 Fed. Appx. 60, 63 (2d Cir. 2016).  Because Plaintiff alludes to informal procedures in her allegations, the Court infers that a formal application for the Studio Coordinator and Florence Directorship positions was not required for consideration.  *See, e.g.*, Dkt. No. 22-3 at ¶ 59.  In the event that discovery establishes that a formal application was required, and that Plaintiff never applied for either position, these claims could be dismissed.

[9] The Court notes that Plaintiff's E.E.O.C. Charge originally contended that Plaintiff was replaced as the instructor for this course in May 2023 by a "presumed White male," but the Complaint and proposed amended complaint alter the timing of the replacement and demographics of the individual ultimately chosen to replace her.  *See* Dkt. No. 8-1 at 3.

(1997)).  Plaintiff's E.E.O.C. Charge, Complaint, and proposed amended complaint are all devoid of allegations that Plaintiff's job description, job title, days and hours worked, salary, benefits, or opportunities for promotion were impacted by Defendants' decision to have another individual teach this specific drawing course.  And while Plaintiff contends that the March 2023 course removal laid the groundwork for the alleged January 2024 termination, this allegation is conclusory.  Moreover, as detailed further below, the circumstances surrounding Plaintiff's alleged "termination" are ambiguous, as it appears that Plaintiff was still employed by Defendants Syracuse University and Syracuse University School of Architecture at the time the Complaint and proposed amended complaint were filed and may still be employed by Defendants as of the issuance of this Memorandum-Decision and Order.  Regardless, the portions of the Complaint and proposed amended complaint concerning the January 2024 "termination," no matter how ambiguous, do not connect that termination, either explicitly or implicitly, to Plaintiff's removal as instructor from the drawing course over nine months prior.  *See* Dkt. No. 22-3 at ¶¶ 176-185.  Based on the lack of allegations regarding any impact the course removal had on her, Plaintiff has failed to adequately plead that her removal from teaching this specific drawing course constituted a "demotion" as that term is understood in the Title VII discrimination context.  *Compare Pollock v. Shea*, 568 F. Supp. 3d 500, 509 (S.D.N.Y. 2021) (demotion found to be adverse employment action at pleadings stage where the plaintiff "allege[d] that her transfer led to a reduction in her staff (from overseeing a staff of over 300 to a staff of nine), as well as a decrease in management responsibilities and prestige").  Thus, Plaintiff's removal as an instructor from the drawing course in 2023 does not constitute an adverse employment action and therefore this allegation cannot serve as a basis for Plaintiff's Title VII discrimination claim.

Finally, in her proposed amended complaint and alluded to above, Plaintiff contends she was "terminated from her full-time, full benefits faculty position in January 2024." Dkt. No. 22-3 at ¶ 182. Termination, of course, is a recognized example of an adverse employment action in the context of Title VII discrimination claims. *See Terry*, 336 F.3d at 138. However, based on Plaintiff's other allegations, it does not appear that Plaintiff was ever actually terminated, as that term is understood in the Title VII discrimination context. For example, in detailing her alleged termination, Plaintiff simultaneously asserts that, on January 9, 2024 (*i.e.*, five days after her alleged termination), Plaintiff was emailed a new contract to teach for the Fall 2024 semester, which she appears to have accepted. Dkt. No. 22-3 at ¶ 185. Plaintiff's Complaint and proposed amended complaint assert that Plaintiff was still a full-time employee of Syracuse University at the time that she filed the Complaint and proposed amended complaint. Dkt. No. 1 at ¶ 4 ("Ms. Herrera was ***and still is*** employed as a full-time Assistant Teaching Professor at SU") (emphasis added); Dkt. No. 22-3 at ¶ 4 ("Ms. Herrera was employed as a full-time Assistant Teaching Professor at SU in the SoA from 2019 ***to present***.") (emphasis added). Plaintiff also still appears on Defendant School of Architecture's faculty page for the 2024-2025 Undergraduate Course Catalogue.[10] It is well-settled that reinstatement of employment negates the contention that a termination constituted an adverse employment action. *See Ticali v. Roman Catholic Diocese of Brooklyn*, 41 F. Supp. 2d 249, 264-65 (E.D.N.Y. 1999) (holding that the plaintiff could not rely on her termination to satisfy the adverse employment action element of her *prima facie* case where her termination was retracted), *aff'd*, 201 F.3d 432 (2d Cir. 1999); *Wanamaker v. Columbian Rope Co.*, 907 F. Supp. 522, 534 (N.D.N.Y. 1995) (finding no adverse employment action where

---

[10] *See School of Architecture Faculty*, SYRACUSE UNIVERSITY, available at https://courses.syracuse.edu/content.php?catoid=38&navoid=4743 (last retrieved March 20, 2025).

employer terminated employee but continued to give employee full salary and benefits because employee "did not lose any pay or other tangible benefits"), *aff'd*, 108 F.3d 462 (2d Cir. 1997).

Plaintiff also asserts that the January 9, 2024 renewal offer was "limited" and "was not the standard contract that Plaintiff had previously had." Dkt. No. 22-3 at ¶ 185. While Plaintiff does not allege *how* the renewal contract differed from her previous contracts, drawing all reasonable inferences in Plaintiff's favor, the allegation that the renewal offer was "not the standard contract" might be sufficient to plead an adverse employment action because such a "limited" contract could indicate that Defendants materially altered the conditions of Plaintiff's employment. *See Sanders*, 361 F.3d at 755. However, even if the new, limited contract constituted an adverse employment action, Plaintiff fails to set forth any allegations from which the Court could infer that the events of January 2024 were motivated by discrimination. Plaintiff makes no attempt to connect the January 2024 events to her membership in protected classes, aside from complaints that she was subjected to the TPEC evaluation process prior to her "termination," while other white employees were not subjected to that process. Dkt. No. 22-3 at ¶ 182. But Plaintiff acknowledges that her TPEC evaluation was positive and does not claim that the TPEC evaluation led to her "termination." *Id.* Additionally, Plaintiff concedes that she was not the only employee at Syracuse University whose contract was not renewed in a traditional manner. *Id.* at ¶ 184 ("[P]rior to the start of the 2023 Fall semester, Defendants' [sic] were required . . . to communicate with current ATPs and other teachers about their contracts for the following Fall 2024 semester. They again systematically ignored this requirement, ***not just with respect to Plaintiff but with respect to other ATPs and teachers***.") (emphasis added); *see also* Dkt. No 27 at 14. Regarding the other faculty members who were offered limited contracts, the Complaint and proposed amended complaint do not state any demographic information pertaining to those other faculty members and therefore the

Court is unable to infer a discriminatory motive from the allegations as they are pled.  *See, e.g.*, *Pitter v. Target Corp.*, No. 1:20-CV-183 (MAD/CFH), 2020 WL 8474858, at *6 (N.D.N.Y. Sept. 1, 2020), *report and recommendation adopted*, 2020 WL 7767629 (N.D.N.Y. Dec. 30, 2020) (citing *Mandell*, 316 F.3d at 379).  As such, for all the foregoing reasons, the events of January 2024 cannot serve as a basis for Plaintiff's Title VII discrimination claim.

Accordingly, Plaintiff's Title VII discrimination claim survives only with regard to the allegations that Defendants failed to award Plaintiff the positions of Studio Coordinator and Florence Directorship in 2022 and 2023.

### b.  Title VII Retaliation (Third Cause of Action)

Title VII forbids an employer from discriminating against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  To establish a *prima facie* case of Title VII retaliation, the plaintiff must show that: "(1) [s]he was engaged in an activity protected under Title VII; (2) [her] employer was aware of [her] participation in the protected activity; (3) the employer took adverse action against [her]; and (4) a causal connection existed between the protected activity and the adverse action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 850 (2d Cir. 2013) (citing *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000)).  The requirement of a materially adverse employment action reflects the principle that "Title VII does not protect an employee from 'all retaliation,' but only 'retaliation that produces an injury or harm.'" *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 569 (2d Cir. 2011) (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)).  Accordingly, "for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly

allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) 'because' [s]he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (citation omitted).

With respect to the first prong of a *prima facie* Title VII retaliation claim, "a plaintiff engages in 'protected activity' when she (1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding or hearing arising under Title VII." *Davis v. NYS Dep't of Corr. Attica Corr. Facility*, 110 F. Supp. 3d 458, 462 (W.D.N.Y. 2015) (quoting *Bundschuh v. Inn on the Lake Hudson Hotels, LLC*, 914 F. Supp. 2d 395, 405 (W.D.N.Y. 2012)). Protected activities can also include "'informal protests of discriminatory employment practices, including making complaints to management' provided that they are 'sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII.'" *Arkorful v. N.Y.C. Dep't of Educ.*, 712 F. Supp. 3d 336, 356 (E.D.N.Y. Jan. 24, 2024) (quoting *Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012)). In the instant case, Plaintiff makes two allegations in the Complaint and proposed amended complaint that the Court finds could constitute "protected activities" within the meaning of Title VII: (1) Plaintiff's December 28, 2022, and January 13, 2023 internal complaints to the Syracuse University Office of Equal Opportunity, Inclusion, and Conflict Resolution Services ("EIORS") regarding certain discriminatory acts; and (2) Plaintiff's E.E.O.C. Charge.[11]

First, in the Complaint and proposed amended complaint, Plaintiff connects only one timely act of retaliation in response to her internal EIORS complaints: the removal of Plaintiff from a teaching assignment in her primary area of expertise. Dkt. No. 1 at ¶ 81; Dkt. No. 22-3 at

---

[11] With regard to Plaintiff's medical leave, it is well-established that taking FMLA leave is not considered a protected activity under Title VII. *See Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 262 (E.D.N.Y. 2012) (citing 42 U.S.C. § 2000e-3).

¶ 85.[12]  While the Court has already concluded, *supra*, that this event did not constitute an adverse employment action in the context of Plaintiff's Title VII *discrimination* claim, the definition of "adverse action" in the *retaliation* context "covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII." *Vega*, 801 F.3d at 90 (citing *Burlington N.*, 548 U.S. at 57).  "[I]n the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.*; *see also Hicks v. Baines*, 593 F.3d 159, 162 (2d Cir. 2010) (same).  Accordingly, "an action need not affect the terms and conditions of a plaintiff's employment for purposes of a retaliation claim" in the same way it must for a Title VII discrimination claim. *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 n.6 (2d Cir. 2010).  It is sufficient for Plaintiff to "plausibly plead a connection between the act and his engagement in protected activity," *Vega*, 801 F.3d at 90 (citing 42 U.S.C. § 2000e–3(a)), which "can be shown indirectly by timing: protected activity followed closely in time by adverse employment action," *id.* (citing *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001)).  While the timeline is ambiguous and, at times, contradictory, the Court finds that Plaintiff's allegations regarding the removal from a teaching assignment are sufficient for the retaliation cause of action to survive.  As an initial matter, it is not unreasonable to conclude that removing an employee from a teaching assignment to which they were previously assigned, and which was within their primary expertise, "could" dissuade a reasonable employee from making an EIORS complaint.  *Vega*, 801 F.3d at 90.  Additionally, while Plaintiff's E.E.O.C. Charge states that she was replaced in this

---

[12] While Plaintiff's Complaint and proposed amended complaint state that the teaching assignment removal was "retaliation for Plaintiff's EEOC complaint," the Court presumes this to be a typo since the preceding sentence discusses the EIORS complaints and the assignment removal occurred prior to July 7, 2023, when the E.E.O.C. Charge was filed.

teaching assignment "on or about May 16, 2023," the Complaint and proposed amended complaint state this action occurred "[i]n March of 2023." *Compare* Dkt. No. 8-2 *with* Dkt. No. 1 at ¶ 80 & Dkt. No. 22-3 at ¶ 84. Since the Complaint and proposed amended complaint contend that the removal and EIORS complaints occurred within less than two months of one another, the Court finds that the temporal proximity between the events make it plausible that the removal would not have occurred but-for the EIORS complaints. *See, e.g.*, *Lamberson v. Six W. Retail Acquisition, Inc.*, 122 F. Supp. 2d 502, 512 (S.D.N.Y. 2000) (two months between complaint and adverse action was a sufficiently close temporal proximity to infer a causal connection); *see also Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) ("The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000e–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer.").

Next, in the proposed amended complaint, Plaintiff asserts that the following actions were taken in retaliation for her filing of the E.E.O.C. Charge: (1) Associate Dean Kyle Miller's omitting positive information from, and misrepresenting certain information in, Plaintiff's fall 2023 performance evaluation letter; and (2) Plaintiff's January 2024 "termination" and subsequent receipt of a "limited" teaching contract. *See* Dkt. No. 22-3 at ¶¶ 176-185. First, again, while the Court found these allegations insufficient for purposes of Plaintiff's Title VII *discrimination* claim, the Court finds they are sufficient to constitute adverse actions in the Title VII retaliation context, since, as a general matter, a reasonable worker could be dissuaded from filing an E.E.O.C. charge if she was subjected to a negative performance review or "termination" of the type described by Plaintiff. *See Krinsky v. Abrams*, No. 01-CV-5052, 2007 WL 1541369, at *11 (E.D.N.Y. May 25, 2007) ("[A] negative evaluation, or the threat of a negative evaluation, while not an adverse employment action that affects terms and conditions of employment, might dissuade a reasonable

worker from making or supporting a charge of discrimination." (alteration omitted) (quoting *Burlington N.*, 548 U.S. at 68) (internal quotation marks omitted)); *see also Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (discharge as an example of adverse action in the Title VII retaliation context).  Second, with respect to causation, the Fall 2023 evaluation letter and the January 2024 "termination" are alleged to have occurred close enough in time to the filing of the E.E.O.C. Charge to satisfy the *prima facie* standard.  *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court has not drawn a bright line defining, for the purposes of a *prima facie* case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship."); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (eight-month gap between E.E.O.C. complaint and retaliatory action suggested a causal relationship).

Accordingly, Plaintiff's Title VII retaliation claim survives only with respect to the allegation that she was replaced as an instructor in a drawing course by an employee outside of her protected class in retaliation for her internal complaints to Syracuse University's EIORS, as well as Plaintiff's allegations that the Fall 2023 performance evaluation and January 2024 "termination" were made in retaliation for Plaintiff's filing of her E.E.O.C. Charge.

### c.  Title VII Disparate Impact (Tenth Cause of Action)

Under Title VII, a plaintiff may bring suit concerning not only overt discrimination or retaliation, "'but also practices that are fair in form, but discriminatory in operation' – that is, practices that have a 'disparate impact.'"  *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020) (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)).  To establish a *prima facie* case of disparate impact under Title VII, a plaintiff "must show that a facially neutral employment

policy or practice has a significant disparate impact." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998) (citing *Griggs*, 401 U.S. at 432). "Allegations which contend only that there is a bottom line racial imbalance in the work force are insufficient." *Id.* (citations omitted).

In the proposed amended complaint, Plaintiff alleges that "Defendants engaged in continuous and systematic de facto departmental policies that included a refusal to follow standard practices and well-accepted procedures so as to discriminate against Plaintiff and others. These continuous and systematic policies had a disparate impact on Plaintiff because of her race, gender and national origin such that she suffered damages." Dkt. No. 22-3 at ¶ 258. With respect to Plaintiff's timely Title VII allegations, the following appear to be connected in some capacity to an existing University policy, practice, or procedure: (1) the handling of Plaintiff's January 13, 2023 internal EIORS complaint, which Plaintiff claims did not constitute a proper "internal investigation" per University policy, *id.* at ¶ 20; (2) Associate Dean Kyle Miller's Fall 2023 evaluation letter, which Plaintiff contends violated University bylaws since she had never previously received one, *id.* at ¶ 181; and (3) Plaintiff's January 2024 "termination" and subsequent receipt of a "limited" teaching contract, which Plaintiff asserts was a result of Defendants' failure to follow University procedures, *id.* at ¶ 185.

Putting aside the fact that Plaintiff has not identified which specific University policies or procedures are the subject of these allegations, Plaintiff does not set forth any allegation that a disparity exists with respect to members of Plaintiff's protected classes, let alone a causal connection between University policy and such disparity. *See Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 160 (2d Cir. 2001), *abrogated on other grounds*, 780 F.3d 128 (2d Cir. 2015) (for *prima facie* showing, a plaintiff must "(1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two."); *see also Mandala*,

975 F.3d at 209 ("to survive a motion to dismiss . . . [a plaintiff] must at least set forth enough factual allegations to plausibly support each of the three basic elements of a disparate impact claim.").  Instead, Plaintiff's allegations concerning University policy allege that Plaintiff, and only Plaintiff, was adversely affected by the policies in question.  Such allegations are more appropriately analyzed under a discrimination, rather than disparate impact, theory, since Title VII disparate impact claims "are concerned with whether employment policies or practices that are neutral on their face and were not intended to discriminate have nevertheless had a disparate effect on [a] protected **group**."  *Reynolds v. Barrett*, 685 F.3d 193, 201 (2d Cir. 2012) (emphasis added); *see also Uwakwe v. Bridging Access to Care, Inc.*, No. 17-CV-06703, 2017 WL 1048070, at *10 (E.D.N.Y. Mar. 16, 2017) ("Plaintiff points to the allegedly discriminatory employment practices used to assert his Title VII discrimination claim as the basis for this claim.  These practices, that Plaintiff alleges impacted him individually, do not support a disparate impact claim.").[13] Additionally, the fact that Plaintiff brings her case under both race and gender discrimination theories—and fails to detail which of those protected classes were allegedly the subject of disparate impact—bolsters this conclusion.

Accordingly, Plaintiff's Title VII disparate impact claim is dismissed in its entirety.[14]

---

[13] While Plaintiff alleges that "other ATPs and teachers" received similar "limited" contracts in January 2024, Plaintiff omits any demographic information regarding those other ATPs and teachers—including their race or gender.

[14] In setting forth Plaintiff's Title VII claims, the Complaint and proposed amended complaint each make a conclusory reference to Defendants' actions creating a "hostile work environment." Plaintiff does not separately list a cause of action for hostile work environment under Title VII, and it is unclear whether Plaintiff is attempting to assert such a claim based on this one reference. Regardless, since the Court finds, *infra*, that Plaintiff fails to state a claim for hostile work environment under NYSHRL's more lenient standard, it declines to *sua sponte* analyze a separate hostile work environment claim under Title VII.

## C. NYSHRL Claims

In her original Complaint, and maintained in her proposed amended complaint, Plaintiff pleads discrimination, retaliation, and hostile work environment claims pursuant to NYSHRL. Dkt. No. 1 at ¶¶ 194-217; Dkt. No. 22-3 at ¶¶ 209-232. Defendants move to partially dismiss Plaintiff's NYSRHL claims to the extent that they are based on allegations that are beyond the applicable statute of limitations. Dkt. No. 7 at 15; Dkt. No. 27 at 8-9.

### i. Statute of Limitations

"Unlike Title VII's 300-day rule, the statute of limitations for actions under New York's Human Rights Law is three years," measured from the filing of the action in court. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (citing N.Y. Civ. Prac. L. & R. 214(2)); *see also Prude v. Logistics One Transp., Inc.*, No. 1:20-CV-0674 (DNH), 2022 WL 4120266, at *5 (N.D.N.Y. Sept. 9, 2022) (citations omitted). Any discrete act of discrimination occurring outside that three-year statutory period is not actionable under NYSHRL. *See Bonner v. Guccione*, 178 F.3d 581, 584 (2d Cir. 1999). The statute of limitations for NYSHRL claims is tolled during the pendency of a complaint with the E.E.O.C. *See Lent v. CCNH, Inc.*, No. 5:13-CV-942 (MAB/ATB), 2015 WL 3463433, at *8 (N.D.N.Y. June 1, 2015) (citation omitted) ("Plaintiff's claims under the NYSHRL were timely filed, as the three-year statute of limitations was tolled during the pendency of Plaintiff's complaint with the EEOC").

Plaintiff commenced the instant action on February 20, 2024. *See* Dkt. No. 1. However, the length of the tolling period based on the pendency of the E.E.O.C. action is not clear since Plaintiff does not make any allegation regarding when Plaintiff received the Right to Sue Letter or when the E.E.O.C. action ended. *Id.*; *see also* Dkt. Nos. 22, 23. The Court is therefore unable to toll the three-year statute of limitations. *See, e.g., Torres v. N.Y. Methodist Hosp.*, No. 15-CV-

1264, 2016 WL 3561705, at *8 (E.D.N.Y. Jan. 7, 2016) (declining to implement tolling where complaint and motion papers lacked information regarding E.E.O.C. action duration).  Thus, with the exception of Plaintiff's NYSHRL hostile work environment claim, any allegation related to events that occurred prior to February 20, 2021 is time-barred with respect to Plaintiff's NYSHRL claims.[15]

Some of Plaintiff's allegations in the Complaint and proposed amended complaint pertain to instances that are alleged to have occurred before February 2021, including Defendants: (1) discontinuing Plaintiff's employment as a "Teaching Associate for both the Summer 2014 and Summer 2015," Dkt. No. 1 at ¶ 146; Dkt. No. 22-3 at ¶ 150, and (2) asking Plaintiff to sign an employment contract without meaningful salary negotiations in 2019, Dkt. No. 1 at ¶ 158-163, Dkt. No. 22-3 at ¶ 162-167.  Since those allegations are barred by the statute of limitations, Plaintiff cannot now pursue NYSHRL causes of action premised on them.  However, as with Plaintiff's Title VII claims, these untimely allegations may be cited as background evidence in support of any timely NYSHRL allegations.  *See Villar v. City of N.Y.*, 135 F. Supp. 3d 105, 121 (S.D.N.Y. 2015) (citing *Anderson*, 558 F. Supp. 2d at 299).

---

[15] While Defendants cite certain New York executive orders that tolled the State's statutes of limitations during the pendency of the COVID-19 pandemic for 228 days, courts in this Circuit have called into question the Governor's authority to toll limitations periods in federal actions and have otherwise expressly barred litigants from relying on those executive orders to extend tolling periods without providing an explanation as to how the COVID-19 pandemic affected their ability to file claims.  *See Johnston v. City of Syracuse*, No. 5:20-CV-1497 (DNH), 2021 WL 3930703, at * 5-6 (N.D.N.Y. Sept. 2, 2021) (recognizing that the COVID-19 Executive Orders were intended to toll, rather than to merely suspend, statutes of limitation, but questioning, in dicta, whether the Governor had authority to do so); *see also Bugliotti et al v. Republic of Argentina*, No. 23-CV-6588, 2024 WL 4349273, at *5 (S.D.N.Y. Sept. 30, 2024).  Although Defendants have cited to the New York executive orders, Plaintiff has not argued for their applicability or in fact referenced them in any way, and thus the Court declines to consider them here.

ii. **Merits**

Based on the holdings above, only the allegations post-dating February 2021 listed, *supra*, Section II(D) will now be considered in analyzing Plaintiff's NYSHRL claims.

As an initial matter, the Court notes that claims brought under NYSHRL have traditionally been "'analyzed identically to claims under . . . Title VII.'" *Cooper v. N.Y.S. Dep't of Labor*, 819 F.3d 678, 680 n.3 (2d Cir. 2016) (quoting *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 316 n.2 (2d Cir. 1999)); *accord Ferrante v. Am. Lung Ass'n*, 90 N.Y.2d 623, 629 (N.Y. 1997). However, "[t]he New York State Legislature passed several amendments to the NYSHRL in June 2019, the effect of which is to render the standard for claims closer to the standard of the [New York City Human Rights Law ("NYCHRL")]." *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021). While Second Circuit courts are currently split over the extent to which NYSHRL standards should be equated with NYCHRL standards, New York state courts have recently treated the two as coextensive. *See, e.g.*, *Syeed v. Bloomberg L.P.*, 41 N.Y.3d 446, 452 (N.Y. 2024) (treating the NYSHRL and the NYCHRL as equivalent in protecting nonresidents who are not yet employed but have proactively sought an actual state- or city-based job opportunity); *cf. Alshami v. City Univ. of N.Y.*, 203 A.D.3d 592, 592 n.1 (1st Dep't 2022) ("[B]ecause [the] plaintiff's claims under the [NYS]HRL accrued before the enactment of [the 2019 amendments], the standard for the discrimination claim under the [NYS]HRL differs from the standard for the discrimination claim under the [NYC]HRL."). Therefore, to the extent that the amendments modify the applicable standards of review, the Court will analyze Plaintiff's allegations independently from its Title VII findings, *supra*.

### a. NYSHRL Discrimination (Fifth Cause of Action)

As noted above, a result of the 2019 amendments, the standard for NYSHRL discrimination claims became "closer" to the standard for NYCHRL discrimination claims. *Livingston*, 563 F. Supp. 3d at 232 n.14; *Edelman v. NYU Langone Health Sys.*, No. 21-Civ-502, 2022 WL 4537972, at *14 (S.D.N.Y. Sept. 28, 2022) (citation and quotation marks omitted). Discrimination claims brought under NYCHRL "are to be reviewed more liberally than Title VII claims, and the provisions of [NYCHRL] must be construed broadly in favor of plaintiffs alleging discrimination." *Levy v. Legal Aid Soc.*, 408 F. Supp. 3d 209, 217 (E.D.N.Y. 2019) (citing *Johnson v. Andy Frain Svcs., Inc.*, 638 Fed. Appx. 68, 71 (2d Cir. 2016) (summary order)). Unlike Title VII, NYCHRL does not require a plaintiff alleging discrimination to prove an adverse employment action. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir. 2013). Rather, "the plaintiff need only show differential treatment -- that she is treated 'less well' -- because of a discriminatory intent." *Id.* at 110 (citing *Williams v. N.Y.C. Hous. Auth.*, 61 A.D. 3d 62, 77 (1st Dep't 2009)). Even under this more liberal standard, however, plaintiffs must still allege facts that give rise to "a minimal inference of discriminatory motivation." *Cruz v. Local 32BJ*, No. 22-Civ-3068, 2024 WL 4357036, at *19 (S.D.N.Y. Sept. 30, 2024) (quoting *Littlejohn*, 795 F.3d at 311); *see also Ward v. Cohen Media Publ'ns LLC*, No. 22-cv-06431, 2023 WL 5353342, at *15 (S.D.N.Y. Aug. 21, 2023) ("[E]ven under the more lenient requirements of the NYCHRL, [a] plaintiff's claims must be more than conclusory or speculative to survive a motion to dismiss.") (original brackets and citation omitted). Allegations that a plaintiff subjectively believes that her employer was engaged in discrimination are "legally irrelevant" and cannot serve as a basis to state a claim upon which relief could be granted. *Id.* (citing *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 328 (S.D.N.Y. 2020)); *see also Lugo v. City of New York*, 518 Fed.

Appx. 28, 30 (2d Cir. 2013) ("While the NYCHRL is indeed reviewed independently from and more liberally than federal [] discrimination claims . . . it still requires a showing of some evidence from which discrimination can be inferred." (internal quotation marks and citation omitted)).

Because the Court has already found that the denial of the Studio Coordinator and Florence Directorship positions sufficiently stated a discrimination claim under the more stringent Title VII standard, the Court finds that these denials also support a claim under the more liberal NYSHRL standard. *See, e.g.*, *Levy*, 408 F. Supp. 3d at 217 (citing *Patane*, 508 F.3d at 115) ("Having determined that Plaintiff has adequately alleged a claim for discrimination under Title VII, the same conclusion is warranted with respect to the analogous NYCHRL claim.").

Next, many of Plaintiff's other timely allegations are brought on the discrimination theory that colleagues outside of Plaintiff's protected classes received professional advancement opportunities over Plaintiff, a female Latina—*i.e.*, a disparate treatment theory. These include: (1) Plaintiff's exclusion from the School of Architecture's "DEIA Council" in the fall of 2023, to which a Japanese woman and white woman were instead appointed; (2) Defendants' failure to nominate Plaintiff for teaching awards in 2021, 2022 or 2023, instead nominating white men and white women; (3) Plaintiff's removal as an instructor from a specific drawing course that was within her primary area of expertise, which was offered to a white woman and ultimately accepted by a tenured male faculty member; (4) Defendants' denial of Plaintiff and her partner's research grant proposals in the spring of 2022, despite Defendants accepting all other faculty research proposals; (5) Defendants' failure to consider Plaintiff for the "NYC Program Director" position in May 2022, which was ultimately awarded to a white applicant with "less employment longevity;" (6) Defendants' failure to consider Plaintiff for six new administrative appointments announced in the spring of 2022, which were all awarded to white men and women; and

(7) Associate Dean Miller's Fall 2023 evaluation letter, which Plaintiff claims contained misrepresentations, despite Dean Miller giving a "glowing and overly supportive" performance evaluation letter to a white female. For the following reasons, the Court finds that these allegations are too conclusory to state a NYSHRL discrimination claim.

First, the Court notes that none of these allegations can support a gender discrimination theory since Plaintiff concedes that both male and female employees received the alleged preferential treatment. *See, e.g.*, *Aiello v. Stamford Hosp.*, No. 3:09-CV-1161, 2011 WL 3439459, at *16 (D. Conn. Aug. 8, 2011) ("First, an inference of gender discrimination is undermined by the fact that [the plaintiff] identifies both female and males who received preferential treatment."); *Hinton v. City Coll. of N.Y.*, No. 05-Civ-8951, 2008 WL 591802, at *13 (S.D.N.Y. Feb. 29, 2008) ("To the extent that [the plaintiff] attempts to raise an inference of discrimination by comparing her treatment with that of others allegedly similarly situated, such an inference plainly fails to the extent the others who supposedly received better treatment were not men, but other women."); *Montgomery v. Chertoff*, No. 03-CV-5387, 2007 WL 1233551, at *13 (E.D.N.Y. Apr. 25, 2007) (no inference of gender discrimination where, *inter alia*, "[m]embers of the clique that received preferential treatment included women"). Second, to the extent that these allegations are specific only to Plaintiff's race or national origin discrimination theory, Plaintiff has not satisfied the *prima facie* standard because she fails to set forth allegations regarding how the ultimate recipients of the opportunities were "similarly situated" employees outside of Plaintiff's protected class. Indeed, apart from the instance in which Plaintiff alleges she was removed from serving as instructor for a drawing course, which was reassigned to a tenured professor (who was, thus, not similarly situated to Plaintiff), and the instance where Plaintiff alleges she was not considered for "NYC Program Director," which was awarded to a white individual whom Plaintiff ambiguously

describes as having "less employment longevity," the Complaint and proposed amended complaint do not set forth any characteristics of the individuals who received advancements over Plaintiff (including, for example, the individuals' employment histories, job titles, or areas of academic expertise). *See Toussaint v. City of N.Y.*, No. 19-CV-1239, 2020 WL 3978317, at *7 (S.D.N.Y. June 29, 2020) ("[T]he complaint is devoid of any allegations indicating that [the comparator] was unqualified for the position, or was significantly less qualified than Plaintiff for the position."); *see also Tsepenyuk v. Fred Alger & Co., Inc.*, No. 22-CV-831, 2023 WL 6173455, at *1 (2d Cir. Sept. 22, 2023) (summary order) (affirming dismissal of NYCHRL discrimination claim "because, without a relevant comparator, [the plaintiff] failed to show that she was treated less well than other employees based on her gender or her pregnancy."); *Annabi v. New York Univ.*, No. 22-CV-3795, 2024 WL 4252062, at *9 (S.D.N.Y. Sept. 20, 2024) (citing *Stinnett v. Delta Air Lines, Inc.*, 803 Fed. Appx. 505, 509 (2d Cir. 2020) (summary order)) (dismissing NYCHRL discrimination claim, holding that "the mere fact that individuals who do not share Plaintiff's race, religion, gender, and/or national identity were selected for programs—while Plaintiff was not—is insufficient to establish discriminatory differential treatment in the absence of any further allegation that those others were similarly situated to Plaintiff."); *compare Serrano v. City of New York*, 226 A.D.3d 575, 576 (1st Dep't 2024) ("[P]laintiffs raised an inference of animus through their allegations of differential treatment of similarly situated white officers in terms of assignments, evaluations, and placement on performance monitoring.  Plaintiffs sufficiently alleged that the white officers were similarly situated.").  Based on this failure, the Court holds that these allegations cannot serve as a basis for Plaintiff's NYSHRL discrimination claim.

For similar reasons, the allegation that Plaintiff was passed over for an "Opportunity Hire" tenure track position cannot support a claim upon which relief could be granted.  While Plaintiff

contends that Defendants "previously" offered this type of tenure track to two male colleagues—which, unlike the above allegations, would support a gender discrimination theory as opposed to a race/national origin discrimination theory—Plaintiff again does not allege any characteristics of those two individuals. *See* Dkt. No. 1 at ¶¶ 108-112; Dkt. No. 22-3 at ¶¶ 112-116.

Overall, the Complaint and proposed amended complaint are devoid of facts sufficient for the Court to infer—directly or indirectly—that Defendants' actions were motivated by discrimination or occurred "because of" a discriminatory intent. *Sutter v. Dibello*, No. 18-Civ-817, 2019 WL 4195303, at *21 (E.D.N.Y. Aug. 12, 2019) (dismissing NYCHRL discrimination claim where amended complaint "contains no averments beyond conclusory allegations that Plaintiff was treated les[s] well because of her [protected status]"), *report and recommendation adopted*, 2019 WL 4193431 (E.D.N.Y. Sept. 4, 2019); *Flaherty v. Dixon*, No. 22-Civ-2642, 2023 WL 2051861, at *12 (S.D.N.Y. Feb. 16, 2023) (granting motion to dismiss NYCHRL disability discrimination claims due to the plaintiff's failure to plausibly allege that she was treated "less well" as a result of discrimination, including in connection with her termination); *Coleman v. N.Y.C. Dep't of Health & Mental Hygiene*, No. 20-Civ-10503, 2022 WL 704304, at *5 (S.D.N.Y. Mar. 9, 2022) (holding that the plaintiff did not "satisfy even the less demanding standard of the NYCHRL. [The plaintiff] does not sufficiently allege any facts to support the claim that he was treated less well than other non-disabled employees for any discriminatory reason").

Based on the foregoing, none of the allegations that fall outside the scope of Plaintiff's Title VII discrimination claim support a claim upon which relief could be granted even under the more liberal NYCHRL standard. Thus, NYSHRL discrimination claim survives only with regard to the allegations that Defendants failed to award Plaintiff the Studio Coordinator and Florence Directorship positions in 2022 and 2023.

### b.  NYSHRL Retaliation (Seventh Cause of Action)

As with NYSHRL discrimination claims, the 2019 amendments modified the standard for NYSHRL retaliation claims to make the standard closer to the standard under NYCHRL.  *See Meckeler v. Cornell Univ.*, No. 23-CV-773 (FJS/ML), 2024 WL 3535488, at *11 (N.D.N.Y. July 25, 2024) ("[F]or claims that accrue on or after the effective date of the NYSHRL October 11, 2019 amendments, the standard for such claims is 'closer to the standard under the NYCHRL.'") (quoting *Wellner v. Montefiore Med. Ctr.*, No. 17-Civ-2479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug 29, 2019)); *see also Thompson v. Shutterstock, Inc.*, No. 23-CV-4155, 2024 WL 2943813, at *25 (S.D.N.Y. June 10, 2024) ("[T]he legislature amended the NYSHRL in 2019, and thus any claims based upon acts of . . . retaliation that occurred after October 11, 2019 are analyzed under a different standard.").  Under the post-amendment NYSHRL, a plaintiff pleading retaliation must show that: (1) she participated in a protected activity; (2) the defendant knew about her participation in a protected activity; (3) the employer engaged in conduct that was reasonably likely to deter a person from engaging in a protected activity; and (4) a causal connection existed between the protected activity and the defendant's conduct.  *See Palmer v. eCapital Corp.*, No. 23-CV-4080, 2024 WL 3794715, at *11 (S.D.N.Y. Aug. 13, 2024); *see also Wright v. City of New York*, No. 23-CV-3149, 2024 WL 3952722, at *10 (S.D.N.Y. Aug. 27, 2024) (explaining that "[r]etaliation victims are provided with broader protection under the NYCHRL — and . . . under the post-amendment NYSHRL — than their federal counterpart" because under the city and state statutes a "plaintiff need not prove any 'adverse' employment action; instead, [she] must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity").  Compared to Title VII, the more lenient NYCHRL standard "requires only conduct that is 'reasonably likely to deter a person from engaging in' protected activity, not a

materially adverse change in the terms and conditions of the plaintiff's employment, and second, the NYCHRL [retaliation standard] imposes a more lenient 'motivating factor' causation standard, rather than requiring but-for causation." *Penzo v. Consolidated Edison Co. of N.Y., Inc.*, No. 1:19-CV-07478, 2024 WL 3824072, at *11 (S.D.N.Y. Aug. 15, 2024) (quoting *Mihalik*, 715 F.3d at 110 n.8, 112, 116) (additional citation omitted).

Here, even considering the additional allegations that are timely under the NYSHRL statute of limitations, there are still only two instances pled that could constitute "protected activities:" (1) Plaintiff's December 28, 2022, and January 13, 2023 internal complaints to the EIORS regarding certain discriminatory acts; and (2) Plaintiff's E.E.O.C. Charge.[16]  Indeed, it appears that, apart from those instances, from February 2021 onward, Plaintiff has not alleged that she "oppose[d] or complain[ed] about unlawful discrimination" in any fashion. *See Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 312-13 (N.Y. 2004); *see also* N.Y. Exec. L. § 296(7); N.Y.C. Admin. Code § 8-107(7); *accord Suriel v. Dominican Republic Educ. & Mentoring Project, Inc.*, 85 A.D.3d 1464, 1467 (3d Dep't 2011).

As the Court has already determined that (1) Plaintiff's allegation that she was replaced as the instructor for a drawing course with an employee outside of her protected class in retaliation for her internal complaints to Syracuse University's EIORS, as well as (2) Plaintiff's allegations that Associate Dean Miller's Fall 2023 evaluation letter and Plaintiff's January 2024 "termination" were actions taken in retaliation for her E.E.O.C. action establish *prima facie* cases of Title VII retaliation, those allegations similarly establish *prima facie* cases under the more liberal NYSHRL retaliation standard. *See Levy*, 408 F. Supp. 3d at 217.

---

[16] With regard to Plaintiff's medical leave, it is well-established that taking FMLA leave is not considered a protected activity under NYSHRL. *See Benson v. Ruttura & Sons Constr. Co.*, Inc., No. 20-Civ-853, 2021 WL 1238712, at *5 (E.D.N.Y. Mar. 31, 2021).

Accordingly, as with Plaintiff's Title VII retaliation claim, Plaintiff's NYSHRL retaliation claim survives only with respect to the allegation that she was replaced as an instructor in a drawing course by an employee outside of her protected class in retaliation for her internal complaints to Syracuse University's EIORS, as well as Plaintiff's allegations that the fall 2023 performance evaluation and January 2024 "termination" were actions taken in retaliation for Plaintiff's filing of her E.E.O.C. Charge.

### c. NYSHRL Hostile Work Environment (Sixth Cause of Action)

The 2019 NYSHRL amendments eliminated the requirement recognized under federal law that, to state a hostile work environment claim, a plaintiff must adequately plead that the alleged conduct was "sufficiently severe or pervasive" to alter the conditions of the victim's employment. *Tortorici v. Bus-Tev, LLC*, No. 17-CV-7507, 2021 WL 4177209, at *13 (S.D.N.Y. Sept. 14, 2021) (citing N.Y. Exec. Law § 300). Now, to state a viable NYSHRL hostile work environment claim, a plaintiff must plausibly allege only "that he or she was subjected to inferior terms, conditions, or privileges of employment because of the individual's membership in one or more protected categories." *Id.*; *see also Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 119 n.16 (S.D.N.Y. 2022). As with discrimination and retaliation claims, the hostile work environment standard is now treated similarly to the standard under NYCHRL, where a plaintiff "need only show that the employer treated her 'less well than other employees, at least in part for a discriminatory reason.'" *Espinoza v. CGJC Holdings LLC*, No. 23-CV-9133, 2024 WL 3520662, at *5 (S.D.N.Y. July 23, 2024) (quoting *Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55, 70 (2d Cir. 2023)). However, the more lenient standard "is not a general civility code," *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 66 (S.D.N.Y. 2020), and does not apply to conduct that "a reasonable victim of

discrimination would consider petty slights and trivial inconveniences," *Williams*, 61 F.4th at 69 (citation omitted).

Unlike claims for discrimination and retaliation under the NYSHRL, "a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Morgan*, 536 U.S. at 122. Thus, "so long as one act is within the limitations period, all of the acts can be relied on to show a hostile work environment." *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 582 (S.D.N.Y. 2011); *see also Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009); *Washington*, 373 F.3d at 318.[17]

Considering all the allegations in the Complaint and proposed amended complaint in the light most favorable to Plaintiff—including those allegations dating as far back as 2014—the Court finds that Plaintiff has failed to state a claim for hostile work environment pursuant to the NYSHRL. "Hostile work environment claims are analyzed under the same provision of the NYCHRL as discrimination claims," *Sotomayor*, 862 F. Supp. 2d at 261, and the standards for each are the same, *Roberts v. United Parcel Serv., Inc.*, 115 F. Supp. 3d 344, 368 (E.D.N.Y. 2015). Having previously found, in the context of Plaintiff's NYSHRL discrimination claim, that Plaintiff failed to sufficiently allege that Defendants acted with a discriminatory motive with respect to most of the complained-of events, the Court holds similarly here. None of the allegations

---

[17] The Court notes, however, that the amendments to the NYSHRL are not retroactive. Thus, any conduct that pre-dates October 2019 remains subject to the more stringent federal standard—*i.e.*, "that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Shultz v. Congregation Shearith Israel*, 867 F.3d 298, 309 (2d Cir. 2017) (quoting *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014)); *see also Wellner*, 2019 WL 4081898 at *5 n.4 (describing that amendments are not retroactive).

previously found to be barred by respective statutes of limitations (*e.g.*, Plaintiff's removal from summer employment in 2014 and 2015 based on a perceived conflict of interest or Plaintiff's 2019 contract negotiation) alter that conclusion.  At the very least, adequate allegations must establish a "differential treatment of **any** degree based on a discriminatory motive."  *Awad v. City of N.Y.*, No. 13-CV-5753, 2014 WL 1814114, at *5 (E.D.N.Y. May 7, 2014) (citing, *inter alia*, *Gorokhovsky v. N.Y.C. Hous. Auth.*, No. 13-Civ-666, 2014 WL 308018, at *2 (2d Cir. Jan. 29, 2014) (summary order)) (emphasis added); *see also Nunez v. N.Y. State Dep't of Corr.*, No. 14-CV-6647, 2015 WL 4605684, at *16 (S.D.N.Y. July 31, 2015) (dismissing a hostile work environment claim where the plaintiff failed to allege that her coworkers took any action against her "on the basis of her sex or any other protected characteristic").  Here, Plaintiff's Complaint and proposed amended complaint primarily set forth a catalogue of workplace grievances, disappointments, and setbacks couched in multiple, differing discrimination theories.  As stated earlier, Plaintiff's subjective belief that those incidents were tied to her sex, race, or national origin, is insufficient to state a claim.  *See Ward*, 2023 WL 5353342 at *15.  While the Court has determined that certain, specific allegations pass muster with respect to Plaintiff's other claims, there is nothing in the Complaint or proposed amended complaint that ties Plaintiff's workplace grievances, disappointments, or setbacks to an ongoing pattern of discriminatory animus sufficient to adequately plead a hostile work environment claim under the NYSHRL.

Accordingly, Plaintiff's NYSHRL hostile work environment claim is dismissed in its entirety.

### D.  FMLA Retaliation (Eighth Cause of Action)

In her original Complaint, and maintained in her proposed amended complaint, Plaintiff brings a claim for retaliation pursuant to the FMLA.  *See* Dkt. No. 1 at ¶¶ 218-231; Dkt. No. 22-3

at ¶¶ 233-246.  Defendants did not discuss this claim in their motion or Omnibus Reply, *see generally* Dkt. Nos. 7, 27, but, as stated *supra*, the Court analyzes the plausibility of this claim for efficiency and in the interest of judicial economy.

### i.  Statute of Limitations

An FMLA claim must be filed within two years of the "last event constituting the alleged violation" or three years if the violation was "willful."  29 U.S.C. § 2617(c)(1)-(2).  "An alleged FMLA violation is willful if an employer either knew or recklessly disregarded whether its conduct violated the FMLA."  *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 463 (2d. Cir. 2011).  "If an employer acted reasonably, or unreasonably but not recklessly, in determining whether its actions were illegal, the alleged violations should not be considered willful."  *Id.*; *see also Lewis v. New York City Police Dep't*, 908 F. Supp. 2d 313, 317 (2d Cir. 2012) (finding that the plaintiff had not alleged willfulness because the plaintiff "ha[d] proffered no evidence and point[ed] to nothing in the record that even suggests [the defendants'] denial of her requests for FMLA leave was reckless").  "At the motion to dismiss stage, a plaintiff must make only a general allegation of willfulness to gain the benefit of the three-year statute of limitations under the FMLA."  *Marsh-Godreau v. SUNY College at Potsdam*, No. 15-CV-437 (LEK/CFH), 2016 WL 1049004, at *9 (N.D.N.Y. Mar. 11, 2016) (quoting *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 192 (S.D.N.Y. 2011)).

Here, the Complaint and proposed amended complaint adequately allege that Defendants' conduct "constitute[d] malicious, willful, wanton, and/or reckless indifference to Plaintiff's protected rights under the FMLA".  Dkt. No. 1 at ¶ 230; Dkt. No. 22-3 at ¶ 245.  Thus, the three-year statute of limitations applies*, see* 29 U.S.C. §§ 2617(c)(1)-(2), and any allegation pertaining to events that occurred on or after February 20, 2021 can be considered with respect to Plaintiff's

FMLA claims.  *See, e.g.*, *Kurtanidze v. Mizuho Bank, Ltd.*, No. 23-Civ-8716, 2024 WL 1117180, at *15 (S.D.N.Y. Mar. 13, 2024) (declining to consider employer actions that occurred more than three years from date of the filing of the complaint).

### ii. Merits

In an FMLA retaliation claim, "an employee asserts that [her] employer discriminated against [her] because [s]he engaged in activity protected by the Act."  *Krosmico v. JPMorgan Chase & Co.*, No. 06-CV-1178, 2006 WL 3050869, at *2 (E.D.N.Y. Oct. 19, 2006) (citing *Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir. 2004)).  "To establish a prima facie case of FMLA retaliation, a plaintiff must establish that (1) '[s]he exercised rights protected under the FMLA;' (2) '[s]he was qualified for [her] position;' (3) '[s]he suffered an adverse employment action;' and (4) 'the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.'"  *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir. 2012) (quoting *Potenza*, 365 F.3d at 168).  As with other types of retaliation claims, for FMLA retaliation claims, an "adverse employment action" is understood to mean "any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising his legal rights."  *Millea v. Metro-North R. Co.*, 658 F.3d 154, 164 (2d Cir. 2011) (applying Title VII retaliation standard for adverse employment actions to FMLA retaliation claims).  This standard protects "not from all retaliation, but from retaliation that produces injury or harm."  *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (quoting *Burlington N.*, 548 U.S. at 67 (2006)).  However, but-for causation is not required under the FMLA as it is under Title VII.  *See Woods v. START Treatment & Recovery Centers, Inc.*, 864 F.3d 158, 169 (2d Cir. 2017) (holding that a jury instruction of "but for" causation for FMLA retaliation was erroneous).  Instead, the Second Circuit has adopted a "negative factor" test—*i.e.*, that the

plaintiff's "taking of FMLA leave [was used] as a negative factor in [an] employment action[.]" *Id.* (emphasis omitted).

The Complaint and proposed amended complaint allege that Plaintiff took an "approved . . . 16 week medical leave" beginning on August 26, 2022.  Dkt. No. 1 at ¶ 50; Dkt. No. 22-3 at ¶ 53.  Since Defendants did not move with respect to Plaintiff's FMLA claim, *see generally* Dkt. Nos. 7, 27, and considering the allegations in her Complaint, the Court finds that Plaintiff has adequately alleged that her medical leave was properly taken in a manner prescribed by the FMLA and that, at all relevant times, Plaintiff was qualified for her position as an assistant teaching professor.  *See* 29 U.S.C.A. § 2612.  Thus, the Court assesses Plaintiff's Complaint and proposed amended complaint to determine whether Plaintiff has adequately alleged that she suffered an adverse employment action as a result of taking FMLA leave.

The only action that Plaintiff explicitly connects to her medical leave in the Complaint and proposed amended complaint is Defendants' decision to disable Plaintiff's access to "all SU resources and communications. . . [and] all university provided software" upon the commencement of Plaintiff's medical leave.  Dkt. No. 1 at ¶¶ 50-52; Dkt. No. 22-3 at ¶¶ 53-55.  Plaintiff claims that Defendant School of Architecture had never before disabled software access to a faculty member on medical leave but that "[u]pon Plaintiff initiating an inquiry as to the legality of this action by the dean and his administration, all access was restored[.]"  *Id.*  Additionally, in her E.E.O.C. Charge, Plaintiff alleges that "[u]pon [her] return to work [Defendants] did not fully restore email server access for more than a month."  Dkt. No. 8-1.  Even under the more liberal pleading standards afforded to FMLA retaliation, the Court finds that the decision to restrict Plaintiff's access to all University software during her medical leave and the failure to immediately restore full access to the University email server upon Plaintiff's return from medical leave did not

constitute adverse employment actions.  Plaintiff does not, for example, allege that those decisions "impacted her salary, position, or seniority as a [University] employee," *Sosa v. N.Y.C. Dep't of Ed.*, 819 Fed. Appx. 30, 34 (2d Cir. 2020), which would evidence that the alleged retaliation "produce[d] injury or harm."  *Fincher*, 604 F.3d at 721; *see also Leizerovici v. HASC Ctr., Inc.*, No. 17-CV-5774, 2018 WL 1115348, at \*8 (E.D.N.Y. Feb. 27, 2018) (motion to dismiss FMLA retaliation claim denied where the plaintiff alleged employer's action in cutting certain work shifts upon his return from medical leave "resulted in a substantial pay cut.").  As the allegations are presented, the Court is unable to ascertain how Plaintiff was impacted at all by the decision to restrict her access to University systems while on medical leave.  And, regardless, Plaintiff concedes that full access to the systems was restored following Plaintiff's inquiry into the issue.  *See, e.g.*, *Gaydos v. Sikorsky Aircraft, Inc.*, No. 14-cv-636, 2016 WL 4545520, at \*9 (D. Conn. Aug. 31, 2016) (no adverse employment action where plaintiff was deprived of "supervisor status" for two weeks, which was "quickly restored," and where plaintiff "did not lose any income or ultimately, any supervisory responsibilities.").  Thus, the alleged access restriction decisions cannot support an FMLA retaliation claim.

While not as explicit, it appears that Plaintiff also attempts to tie Defendants' decisions not to award Plaintiff the Studio Coordinator and Florence Directorship positions to her FMLA retaliation claim.  *See* Dkt. No. 1 at ¶ 209; Dkt. No. 22-3 at ¶ 239 (alleging FMLA retaliation where Defendants "stripp[ed] Plaintiff] of her job duties and responsibilities" and "den[ied Plaintiff] opportunities and advancement"); *see also* Dkt. No. 8-1 ("Following my medical leave, I was denied the position of Studio Coordinator").[18]  Because the Court has already noted, *supra*, that

---

[18] It is unclear whether Plaintiff attempts to tie any other alleged actions to her FMLA retaliation claim, but, regardless, such an attempt would fail due to the lack of temporal proximity of any other alleged actions to Plaintiff's medical leave (*i.e.*, August 16, 2022 through December 15,

the denial of these advancement opportunities is sufficient to establish adverse employment action under the more stringent Title VII discrimination standards, it follows that they also establish adverse employment actions under the more lenient FMLA retaliation standards. Thus, the only question that remains is whether Plaintiff has pled facts sufficient to show retaliatory intent by way of a causal connection between her taking of medical leave and her denial of these advancement opportunities. In that regard, the Court finds in the affirmative. At the *prima facie* stage, "a plaintiff can indirectly establish a causal connection to support a . . . retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001). "Though there is no bright-line rule on temporal proximity, [the Second Circuit] has held that a one to two month period between the protected activity and adverse employment action is generally sufficient to make a prima facie causation showing." *Rivera v. JP Morgan Chase*, 815 Fed. Appx. 603, 608 (2d Cir. 2020) (summary order). Here, Plaintiff returned from her medical leave in December 2022. Dkt. No. 1 at ¶ 10; Dkt. No. 22-3 at ¶ 10. While Plaintiff fails to allege the date upon which she was denied the position of Studio Coordinator, her E.E.O.C. Charge does list the denial as occurring "[f]ollowing [Plaintiff's] medical leave," a statement she does not make with respect to any other allegation. *See* Dkt. No. 8-1. In the Complaint and proposed amended complaint, Plaintiff contends that she inquired about and was denied the opportunity to be considered for the Florence Directorship in January 2023—less than a month after her return to

---

2022). *See Gray v. Onondaga-Cortland-Madison BOCES*, No. 5:16-CV-973 (NAM/TWD), 2020 WL 1029022, at *7 (N.D.N.Y. Mar. 3, 2020) (using date plaintiff submitted notice of medical leave to analyze temporal proximity); *see also Seitz v. New York State*, No. 18-CV-4149, 2019 WL 4805257, at *11 (E.D.N.Y. Sept. 30, 2019) ("There is no firm outer limit to the temporal proximity required, but most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference.").

work.  Dkt. No. 1 at ¶ 96; Dkt. No. 22-3 at ¶ 100.  Thus, viewing the pleadings in the light most favorable to Plaintiff and affording Plaintiff every reasonable inference, these two events are alleged to have occurred close enough in time to Plaintiff's medical leave such that Plaintiff has adequately pled *prima facie* causation for purposes of the FMLA retaliation claim.

Accordingly, Plaintiff's FMLA retaliation claim survives only with regard to the allegations that Defendants failed to award Plaintiff the positions of Studio Coordinator and Florence Directorship following Plaintiff's return from medical leave.

### E.  Claim Pursuant to 42 U.S.C. § 1981 (First Cause of Action)

As discussed above, in her proposed amended complaint, Plaintiff replaced her cause of action pursuant to the Fourteenth Amendment with a cause of action pursuant to 42 U.S.C. § 1981 ("Section 1981").  *See* Dkt. No. 22-3 at ¶¶ 186-190.

Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every state and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and actions of every kind, and to no other.

42 U.S.C. § 1981(a).  To state a claim under Section 1981, plaintiffs "must allege facts supporting the following elements: (1) plaintiffs are members of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities."  *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000).  The same "core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981." *Patterson*, 375 F.3d at 224.  The statute of limitations applicable to claims brought under § 1981 in New York is three years. *See, e.g.*, *Tadros v. Coleman*, 898 F.2d 10, 12 (2d Cir. 1990) (per curiam), *cert. denied*,

498 U.S. 869 (1990). Therefore, any allegation pertaining to events that occurred on or after February 20, 2021, can be considered in analyzing Plaintiff's Section 1981 claim.

The Court has already analyzed the viability of Plaintiff's discrimination allegations dating back to February 2021 under the more liberal NYSHRL pleading standard. In doing so, it held that the only allegations allowed to proceed are the same as the allegations allowed to proceed under Plaintiff's Title VII discrimination claims—namely, Defendants' failure to award Plaintiff the positions of Studio Coordinator and Florence Directorship in 2022 and 2023. Since those allegations state a cognizable claim for Title VII discrimination, and because Section 1981 claims are analyzed under the same standards as Title VII discrimination claims, the same holding applies to Plaintiff's Section 1981 claim.

Accordingly, Plaintiff's Section 1981 cause of action survives only with regard to the allegations that Defendants failed to award Plaintiff the positions of Studio Coordinator and Florence Directorship in 2022 and 2023.

### F.  "Common Law Wrongful Termination" Claim (Fourth Cause of Action)

Finally, Plaintiff's proposed amended complaint adds a cause of action for "Common Law Wrongful Termination Against Public Policy." *See* Dkt. No. 22-3 at ¶¶ 204-208. In doing so, Plaintiff asserts that "Defendants, individually and in concert with each other violated Plaintiff's contractual rights by breaching them in bad faith when they, among other things, failed to communicate about a contract extension for the Fall 2024 semester as required in August 2023" and that "Defendants [] wrongfully terminated Plaintiff on or about January 4, 2024." *Id.* at ¶¶ 205-206. Defendants counter by arguing that New York does not recognize a common law cause of action for wrongful termination absent a showing that Plaintiff was not an at-will employee. *See* Dkt. No. 27 at 10-11.

First, it is true that New York has long recognized the "employment at-will doctrine," whereby Courts presume an employment relationship to be a "hiring at will, terminable by either party." *Baron v. Port Auth. of N.Y. & N.J.*, 271 F.3d 81, 85 (2d Cir. 2001) (quoting *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 333 (N.Y. 1987)).  In the at-will context, New York courts have refused to recognize a common law wrongful termination claim.  *See, e.g.*, *Chimarev v. TD Waterhouse Inv'r Servs.*, 99 Fed. Appx. 259, 262 (2d Cir. 2004).  "This presumption does not apply, however, when the employer and the employee are parties to an 'agreement establishing a fixed duration.'"  *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 137 (2d Cir. 2007) (quoting *De Petris v. Union Settlement Ass'n*, 86 N.Y.2d 406, 410 (N.Y. 1995)).  "The 'fixed duration' sufficient to defeat the at-will presumption may be satisfied by a contract that promises employment for a term of months or years." *Lebetkin v. Giray*, No. 18-cv-8170, 2020 WL 1445752, at *5 (S.D.N.Y. Mar. 25, 2020) (citing *TSR Consulting Servs., Inc. v. Steinhouse*, 267 A.D.2d 25, 27 (1st Dep't 1999)).  In the instant case, Plaintiff has pled that she was under an employment contract for a definite period (one year).  *See* Dkt. No. 22-3 at ¶ 112 ("Plaintiff is under contract each year from August 15 – May 15").  Thus, reading this allegation in the light most favorable to Plaintiff, Defendants are not entitled to dismissal of this cause of action on the ground that Plaintiff was an at-will employee.  *See TSR Consulting Servs.*, 267 A.D.2d at 27 (declining to dismiss case with a fixed duration employment contract where facts were not conclusive regarding whether the contract outlined if the employee was at-will).

In the wrongful discharge context, "where an employment contract has been breached by the employer, the aggrieved employee may elect between [1] suing for [her] compensation under the terms of the contract or [2] suing in quantum meruit for the reasonable value of the work performed, minus the value of any payments received." *Seymore v. Reader's Digest Ass'n, Inc.*,

493 F. Supp. 257, 264 (S.D.N.Y. 1980) (citations omitted).  Since Plaintiff alleges that Defendants "violated [her] contractual rights by breaching them in bad faith," Dkt. No. 22-3 at ¶ 205, the Court interprets Plaintiff's wrongful discharge cause of action to sound in the former breach of contract theory.  In New York, to state a viable claim for breach of contract, Plaintiff must establish: "[1] the existence of a contract, [2] the plaintiff's performance pursuant to the contract, [3] the defendant's breach of his or her contractual obligations, and [4] damages resulting from the breach."  *Shapiro v. John T. Mather Hosp. of Port Jefferson, N.Y., Inc.*, 208 A.D.3d 913, 914 (2d Dep't 2022) (citing cases).

Here, Plaintiff alleges that Defendants breached her employment contract by failing to offer an extension of the contract by a certain time.  *See* Dkt. No. 22-3 at ¶ 205 ("Defendants, individually and in concert with each other violated Plaintiff's contractual rights by breaching them in bad faith when they, among other things, failed to communicate about [a] contract extension for the Fall 2024 semester as required in August 2023.").  Assuming this behavior did in fact constitute a breach of Plaintiff's employment contract, Plaintiff nevertheless fails to establish what, if any, damages she sustained as a result of that breach.  As discussed in detail, *supra*, it does not appear Plaintiff was ever "terminated."  While Plaintiff alleges that she was terminated "on or about January 4, 2024," that contention is belied by Plaintiff's own admission immediately thereafter that Defendants "emailed [her] on January 9, 2024 with a new contract to teach for the Fall 2024 semester," which she appears to have accepted.  Dkt. No. 22-3 at ¶ 185.  This contradiction is notable since recoverable damages on a wrongful discharge theory are generally limited to "the salary fixed by the contract for the unexpired period of employment."  *Amaducci v. Metropolitan Opera Ass'n*, 33 A.D.2d 542, 543 (1st Dep't 1969) (citation omitted).  "[D]amages to the good name, character and reputation of the plaintiff are not recoverable in an

action for wrongful discharge." *Id.*; *see also Pryles v. State*, 380 N.Y.S.2d 429, 433 (Ct. Cl. 1975), *aff'd*, 51 A.D.2d 827 (3d Dep't 1976).  On the face of the proposed amended complaint, it appears that Plaintiff is alleging that Defendants breached her employment contract for the 2023-2024 term when they failed to communicate a renewal for 2024-2025.  But Plaintiff does not make any allegation that she was not paid, or paid less than she would have been, at any point during the 2023-2024 contract term as a result of Defendants' breach.  *See* Dkt. No. 22-3 at ¶ 4 ("Ms. Herrera was employed as a full-time Assistant Teaching Professor . . . from 2019 to present.").  Indeed, it appears Plaintiff continued to be compensated under the 2023-2024 contract and Plaintiff acknowledges that she was ultimately offered a contract for the 2024-25 school year, which she must have accepted, given that Plaintiff admits to being continuously employed by Defendants. *See id.*; *see also* Dkt. No. 22-3 at ¶ 185.  And while Plaintiff asserts that this renewal offer was for a "limited" contract and "was not the standard contract that Plaintiff had previously had," Plaintiff fails to set forth allegations regarding *how* the contract was limited or different, including whether the differences related to Plaintiff's salary or benefits.  Thus, the Complaint and proposed amended complaint lack any allegations that Plaintiff suffered any cognizable damages that would be recoverable under a common law wrongful discharge theory.  *See, e.g.*, *Goldman v. City Specialty Stores*, 285 A.D. 880, 881 (1st Dep't 1955) (citation omitted) ("The measure of damages in a suit for breach of a contract of employment is the amount plaintiff employee would have earned had the contract been performed, less what the employee, acting reasonably, could have earned.").

Accordingly, Plaintiff's cause of action for "Common Law Wrongful Termination Against Public Policy" is dismissed in its entirety.

### G. Plaintiff's Cross-Motion for Leave to Amend

Having now assessed the plausibility of all claims pled in Plaintiff's Complaint and proposed amended complaint, the Court addresses whether Plaintiff's request for leave to amend the Complaint would be futile. An amendment is considered futile "if the proposed amended complaint would be subject to 'immediate dismissal' for failure to state a claim or on some other ground." *Jones v. New York Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir. 1999). "[I]f a claim contained in a proposed amended complaint would be vulnerable in the face of a Rule 12(b)(6) motion, then permitting amendment would be an act of futility that should not be sanctioned. . . . If, on the other hand, a proposed claim sets forth facts and circumstances which may entitle the plaintiff to relief, then futility is not a proper basis on which to deny amendment." *Castro v. Heath*, No. 9:12-CV-01250 (MAD/DEP), 2013 WL 5354241, at *13 (N.D.N.Y. Sept. 23, 2013) (quotations and citations omitted) (granting motion for leave to amend only as to those assertions in proposed amended complaint that survive 12(b)(6) analysis).

As set forth above, certain of Plaintiff's causes of action in her proposed amended complaint are pled sufficiently to survive a motion to dismiss. Accordingly, Plaintiff's cross-motion seeking leave to amend the complaint is granted in part and denied in part. Plaintiff is instructed to file her proposed amended complaint, modified in accordance with the findings made herein, including by removing the claims that the Court has now determined should be dismissed, within fourteen (14) days of the entry of this Memorandum-Decision and Order.

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' Partial Motion to Dismiss, Dkt. No. 7, is **GRANTED in part** and **DENIED in part**; and the Court further

**ORDERS** that Plaintiff's causes of action brought under the United States and New York State Constitutions are **DISMISSED as abandoned**;

**ORDERS** that Plaintiff's Title VII causes of action against Defendant Speaks are **DISMISSED**; and the Court further

**ORDERS** that Plaintiff's First Cause of Action pursuant to 42 U.S.C. § 1981 may proceed against all Defendants **ONLY AS TO** the 2022 and 2023 decisions not to award Plaintiff the positions of Studio Coordinator and Florence Directorship; and the Court further

**ORDERS** that Plaintiff's Second Cause of Action for Title VII Discrimination may proceed against Defendants Syracuse University and Syracuse University School of Architecture **ONLY AS TO** the 2022 and 2023 decisions not to award Plaintiff the positions of Studio Coordinator and Florence Directorship; and the Court further

**ORDERS** that Plaintiff's Third Cause of Action for Title VII Retaliation may proceed against Defendants Syracuse University and Syracuse University School of Architecture **ONLY AS TO** the allegation that Plaintiff was replaced as the instructor for a drawing course by an employee outside of her protected class in retaliation for her internal complaints to Syracuse University's EIORS, as well as Plaintiff's allegations that the fall 2023 performance evaluation and January 2024 "termination" were made in retaliation for Plaintiff's filing of her E.E.O.C. Charge; and the Court further

**ORDERS** that Plaintiff's Fourth Cause of Action for "Common Law Wrongful Termination Against Public Policy" is **DISMISSED**; and the Court further

**ORDERS** that Plaintiff's Fifth Cause of Action for NYSHRL Discrimination may proceed against all Defendants **ONLY AS TO** the 2022 and 2023 decisions not to award Plaintiff the positions of Studio Coordinator and Florence Directorship; and the Court further

**ORDERS** that Plaintiff's Sixth Cause of Action for NYSHRL Hostile Work Environment is **DISMISSED**; and the Court further

**ORDERS** that Plaintiff's Seventh Cause of Action for NYSHRL Retaliation may proceed against all Defendants **ONLY AS TO** the allegation that Plaintiff was replaced as the instructor for a drawing course by an employee outside of her protected class in retaliation for her internal complaints to Syracuse University's EIORS, as well as Plaintiff's allegations that the Fall 2023 performance evaluation and January 2024 "termination" were made in retaliation for Plaintiff's filing of her E.E.O.C. Charge; and the Court further

**ORDERS** that Plaintiff's Eighth Cause of Action for FMLA Retaliation may proceed against all Defendants **ONLY AS TO** the decisions not to award Plaintiff the positions of Studio Coordinator and Florence Directorship following Plaintiff's return from medical leave; and the Court further

**ORDERS** that Plaintiff's Ninth Cause of Action for "Continuous and Systematic Violations Title VII Discrimination" is **DISMISSED**; and the Court further

**ORDERS** that Plaintiff's Tenth Cause of Action for Title VII Disparate Impact is **DISMISSED**; and the Court further

**ORDERS** that Plaintiff's Cross-Motion for Leave to Amend, Dkt. No. 22, is **GRANTED in part** and **DENIED in part**; and the Court further

**ORDERS** that Plaintiff shall file the Proposed Amended Complaint, Dkt. No. 22-3, modified in accordance with the findings made herein, within fourteen (14) days of the entry of this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the Parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 20, 2025
      Albany, New York

Anne M. Nardacci
U.S. District Judge